In re the **WELFARE OF C.R.M.**, child.

No. C6–98–2385.

Supreme Court of Minnesota.

June 15, 2000.

John M. Stewart, Minnesota State Public Defender, Chad M. Oldfather, Assistant State Public Defender, Minneapolis, for appellant.

Michael Hatch, Minnesota Attorney General, St. Paul, Robert M. Johnson, Anoka County Attorney, M. Katherine Doty, Anoka, for respondent.

## OPINION

STRINGER, Justice.

In the course of a standard contraband check conducted on students' coats at a juvenile day school in Anoka County, Minnesota on Monday, November 2, 1998, a teacher found a folding knife with a four-inch blade in appellant C.R.M.'s coat pocket. Appellant, a minor, was a student at the school. Appellant identified the coat as his and said he forgot to remove the knife from his coat after whittling over the weekend. Appellant was convicted for possessing a dangerous weapon on school property under Minn.Stat. § 609.66, subd. 1d (1998), a felony offense. The court of appeals affirmed holding that appellant should have known that the knife was in his coat. *See In re C.R.M.*, No. C6–98–2385, 1999 WL 595371, *2 (Minn.App. Aug.10, 1999). Appellant challenges his conviction here, arguing that the state must prove that he had knowledge of possession. We reverse.

Appellant attended Anoka County Juvenile Day School pursuant to a prior dispositional order. Contraband searches are conducted on the students' coats nearly every day at the school after the coats are hung on hooks in the hallway near the students' classrooms. If contraband is found, the school's procedure is for the teacher to enter the classroom nearest to where the coats are hung and to ask who owns the coat. When the coat is identified the student who owns it is asked about the contraband. If the contraband is "serious"[1] the school authorities contact probation officers or the police.

On Monday, November 2, 1998 the lead teacher of the school, Waneta Hord, and several students conducted a routine contraband search. A student brought a coat to Hord reporting a knife in the coat pocket. Hord brought the coat into the nearest classroom, displayed the coat and asked who owned it. Appellant immediately identified the coat as his but when asked by Hord what was in the coat pocket, he said that he did not know. Hord told him that a knife was found in his pocket and removed a folding knife with a four-inch blade. Appellant responded, "Oh man, I forgot to take it out, I was whittling this weekend." In accordance with school procedure upon finding serious contraband, Hord called the police and retained possession of the knife until the police confiscated it.

Anoka County Police Sergeant Hammes responded to the call from the school and after investigation appellant was charged with violating Minn.Stat. § 609.66, subd. 1d, which makes possession of a dangerous weapon on school property a felony level offense. At trial, Hord testified that when she asked who owned the jacket, appellant immediately responded "I do" and was very cooperative throughout all of her questioning. She also testified that when she pulled the knife out and appellant said he had been whittling, his reaction was "spontaneous" and "believable." Sergeant Hammes testified that appellant admitted that the knife was his, and that the day before he had been whittling with the knife

---

1. Contraband was described by a school authority as everything from tobacco products and gum to weapons.

and had put it in his coat pocket but forgot to take it out. Appellant also told Sergeant Hammes that before coming to school on Monday he patted himself down but missed the knife. Appellant's mother told the court that appellant had on a "double jacket" that morning so even though he patted himself down, he could not feel the knife. A probation officer also told the court there was no evidence that appellant brought the knife to school to get into a fight. The court concluded, "I don't know that I believe that [appellant] was whittling. I believe he brought it accidentally."

After testimony from Horn and Hammes appellant moved for a directed verdict,[2] arguing that any reasonable interpretation of section 609.66, subd. 1d, would require appellant to know that the knife was in his coat pocket and that general intent required knowledge of possession. The prosecutor responded that the statute does not require knowledge or intent because it creates a strict liability crime—the state need only show appellant possessed a dangerous weapon on school grounds.

The district court determined that appellant was guilty, noting:

I'm going to find him guilty as the law is written because he did possess the knife that was in his coat.

Now I'm going to let you take it up but I can't get you to take it up unless I find him guilty, and if someone wants to indicate that in order to achieve a felony status there's got to be mens rea that he had that knife and he knew that he had that knife when he walked in there fine, but right now this isn't the way the statute reads.

A dispositional order was filed on November 24, 1998, ordering appellant to comply with previously imposed conditions relating to the earlier offenses,[3] to write a letter of apology and to possess no weapons, including knives, until he turned 19.

The court of appeals affirmed. *See In re C.R.M.*, 1999 WL 595371 at *2. The court first reasoned that although a person cannot be found guilty for unwitting possession, this was not unwitting possession[4] because appellant was "aware that he had a duty to avoid bringing a weapon to school" and two days prior to the offense he knowingly possessed the weapon. *Id.* at 1. The court noted that although the district court believed appellant accidentally brought the knife to school, the district court made no finding as to whether the possession was unwitting. *See id.*[5] The court of appeals concluded that "[b]ecause

---

**2.** The appropriate motion under the Minnesota Rules of Criminal Procedure is a motion for judgment of acquittal. *See* Minn. R.Crim. P. 26.03, subd. 17.

**3.** For appellant's earlier offenses he was placed under the supervision of Anoka County Juvenile Corrections until his 19th birthday, he was ordered to pay restitution of $85.47 to the victims of his assaults, to have no contact with the victims, one victim's family members and his accomplices, to engage in no assaultive or violent behavior, to attend counseling and to be monitored under home electronic monitoring.

**4.** The court stated that an example of unwitting possession would be if a classmate put the knife into appellant's coat without his knowledge. *See In re C.R.M.*, 1999 WL 595371 at *1.

**5.** The court also cited *United States v. Garrett*, 984 F.2d 1402, 1413 (5th Cir.1993), for the

holding that passengers possessing weapons on airplanes are guilty of a misdemeanor if they knew or should have known that they were carrying a concealed weapon as they boarded an airplane. *See In re C.R.M.*, 1999 WL 595371 at *2. Although the court in *Garrett* explicitly stated that the "should have known" standard was appropriate in large measure because the offense was a misdemeanor and not a felony, *Garrett*, 984 F.2d at 1412-13, the court of appeals referred to Minnesota statutes creating felonies in negligence crimes, for example Minn.Stat. § 609.205 (1998), which provides a penalty of up to 10 years in prison for culpable negligence resulting in the death of another, and Minn.Stat. § 609.576(b)(3) (1998), which provides a three-year penalty for culpable negligence resulting in a fire causing property damage. *See In re C.R.M.*, 1999 WL 595371 at *2.

there is sufficient evidence that appellant should have known that the knife was in his coat, we affirm the trial court." *Id.* at *2. The court relied heavily on the fact that even though appellant was charged and convicted of a felony, his sentence was light, explaining that where there is a substantial loss of liberty a different approach may be appropriate, but in negligent possession cases there is "little reason to expect * * * severe loss of liberties * * *." *Id.*

On review here appellant again argues that section 609.66, subd. 1d, requires the state to prove that appellant knew that he possessed a dangerous weapon. Minnesota Statutes § 609.66, subd. 1d, states:

> [W]hoever possesses, stores, or keeps a dangerous weapon or uses or brandishes a replica firearm or a BB gun on school property is guilty of a felony and may be sentenced to imprisonment for not more than two years or to payment of a fine of not more than $5,000, or both.

Minn.Stat. § 609.66, subd. 1d.

■ The object of statutory interpretation is to determine and effectuate legislative intent, *see* Minn.Stat. § 645.16 (1998), construing words according to their common and approved usage, *see* Minn.Stat. § 645.08, subd. 1 (1998); in so doing here, we are aware that the legislative authority to create criminal strict liability offenses has been recognized in Minnesota. *See State v. Morse,* 281 Minn. 378, 383–84, 161 N.W.2d 699, 702–03 (1968). We are also mindful however, that strict liability statutes are generally disfavored, *see Staples v. United States,* 511 U.S. 600, 606, 114

S.Ct. 1793, 128 L.Ed.2d 608 (1994), and legislative intent to impose strict criminal liability must be clear, *see State v. Neisen,* 415 N.W.2d 326, 329 (Minn.1987). Our determination that the legislature intended to create a strict liability crime can only be reached after a careful and close examination of the statutory language, *see State v. Orsello,* 554 N.W.2d 70, 74 (Minn.1996), and we are to apply the "rule of lenity" requiring penal statutes to be strictly construed in favor of a criminal defendant. *See Orsello,* 554 N.W.2d at 74.

Our first consideration is whether the legislature intended the terms "possesses, stores or keeps" to require the state to prove that the defendant knew that he possessed, stored or kept a weapon. These terms are not defined in the statute and dictionary definitions provide little guidance [6]—thus we turn to legislative history. Section 609.66, subd. 1d, was introduced in the legislature in February 1993 in three separate bills, none including a reference to knowledge or intent.[7] Legislative discussion before the House Subcommittee on Criminal Justice and Family Law suggests a focus on regulatory concerns,[8] and that the bill was intended to address inconsistencies in the law by making it a felony for a student to possess a pistol on school grounds as well as to possess other weapons, such as switchblades. An important objective of the bill was thus to make the possession of weapons other than guns in school zones a felony.

The two goals of the bills—to create safer schools and to create consistent felonies

---

6. Webster's defines "possess" as "to have and to hold as property." *Webster's Third New International Dictionary* 1770 (1961). "Store" is defined as "to collect as a reserved supply: lay away: accumulate * * * something that is stored or kept for future use." *Id.* at 2252. Among the *Webster's* definitions of "keep" is "to retain or continue to have in one's possession or power esp. by conscious or purposive policy." *Id.* at 1235.

7. *See* H.F. 222, H.F. 559, S.F. 494, 78th Minn. Leg.1993.

8. For example, Representative Charles Weaver testified that three million crimes occur on school campuses every year, 160,000 children skip school every year for fear of being hurt, and weapons are appearing more frequently in Minnesota schools. *See* Hearing on H.F. 222, H. Subcomm. Crim. Justice and Fam. Law, 78th Minn. Leg., March 3, 1993 (audio tape) (comments of Rep. Charles R. Weaver).

for weapon possession in schools–were based on concerns for the public welfare and thus implicate decisions of the United States Supreme Court and this court regarding the mens rea[9] in enforcement of statutes enacted for the welfare of the public. In *Morissette v. United States*, the Court reflected on the role of public welfare offenses as part of a criminal statutory scheme:

> Many violations of such regulations result in no direct or immediate injury to person or property but merely create the danger or probability of it which the law seeks to minimize. * * * [T]heir occurrence impairs the efficiency of controls deemed essential to the social order as presently constituted. In this respect, whatever the intent of the violator, the injury is the same. * * * Hence, legislation applicable to such offenses, as a matter of policy, does not specify intent as a necessary element. The accused * * * usually is in a position to prevent [the violation] with no more care than society might reasonably expect and no more exertion than it might reasonably exact from one who assumed his responsibilities.

342 U.S. 246, 255–56, 72 S.Ct. 240, 96 L.Ed. 288 (1952).

More recently in *Staples*, the Court provided important guidance for our analysis here when it held that the prosecution is required to prove beyond a reasonable doubt that a defendant charged under the National Firearms Act for possessing a machine-gun knew that the weapon he possessed was in fact a machinegun. 511 U.S. at 602, 114 S.Ct. 1793. The Court first acknowledged that "the existence of a mens rea is the rule of, rather than the exception to," common law crimes and may be read into common law crimes even where the statute does not explicitly require it. *Id.* at 605, 114 S.Ct. 1793 (quoting *United States v. United States Gypsum Co.*, 438 U.S. 422, 436, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978)). However, the Court noted that statutes concerning "public welfare" or "regulatory offenses," which typically "regulate potentially harmful or injurious items," are not subject to a presumption requiring proof of a mens rea to establish liability. *Id.* at 606–07, 114 S.Ct. 1793. The rationale for eliminating such a presumption is that regulatory statutes impose liability for the "type of conduct that a reasonable person should know is subject to stringent public regulation and may seriously threaten the community's health or safety." *Liparota v. United States*, 471 U.S. 419, 433, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985). The Court also reasoned that while there is no tradition of lawful possession or selling of hand grenades or narcotics, "there is a long tradition of widespread lawful gun ownership by private individuals in this country," thus the mere possession of a firearm does not put owners on notice that they are engaging in conduct inherently dangerous to the public. *Staples*, 511 U.S. at 610, 114 S.Ct. 1793. In fact, the Court observed that precisely because certain guns are "commonplace and generally available * * * we [do] not consider them to alert individuals to the likelihood of strict regulation." *Id.* at 611, 114 S.Ct. 1793.

The *Staples* Court went on to emphasize the importance of the level of punishment attached to an offense in considering whether a statute is regulatory, observing "[h]istorically, the penalty imposed under a statute has been a significant consideration in determining whether the statute should be construed as dispensing with mens rea." *Id.* at 616, 114 S.Ct. 1793. The Court noted that fines and short jail sentences, but not imprisonment, have historically been legitimate punishment for strict liability offenses and reasoned that the less severe penalties attached to public welfare

---

9. Mens rea is "[t]he state of mind that the prosecution, to secure a conviction, must prove that a defendant had when committing a crime; criminal intent or recklessness * * *. Mens rea is * * * [an] essential element[] of every crime at common law." *Black's Law Dictionary* 999 (7th ed.1999).

statutes "logically complement" the absence of the mens rea requirement. *Id.* at 616, 114 S.Ct. 1793. The Court then "questioned whether imprisonment is compatible with the reduced culpability required for * * * regulatory offenses." *Id.* at 617–18, 114 S.Ct. 1793. Observing that the public welfare analysis "hardly seems apt" for a felony, *id.* at 618, 114 S.Ct. 1793 the Court appeared to stop just short of holding that a public welfare offense cannot be a felony. The Court held

> where, as here, dispensing with mens rea would require the defendant to have knowledge only of traditionally lawful conduct, a severe penalty is a further factor tending to suggest that Congress did not intend to eliminate the mens rea requirement. In such a case, the usual presumption that a defendant must know the facts that make his conduct illegal should apply.

*Id.* at 618–19, 114 S.Ct. 1793. The Court then concluded that the penalty attached to the statute indicated that Congress did not intend to eliminate the mens rea requirement because "if Congress had intended to make outlaws of gun owners who were wholly ignorant of the offending characteristics of their weapons, and to subject them to lengthy prison terms, it would have spoken more clearly to that effect." *Id.* at 620, 114 S.Ct. 1793.

In Minnesota, the distinction between strict liability crimes and those requiring a mens rea has been recognized in both our case law and statutes; for example and relevant here, is Minn.Stat. § 609.02, subd. 9 (1998), providing definitions for chapter 609 offenses:

> (1) When criminal intent is an element of a crime in this chapter, such intent is indicated by the term "intentionally," the phrase "with intent to," the phrase "with intent that," or some form of the verbs "know" or "believe."
> (2) "Know" requires only that the actor believes that the specified fact exists.
> (3) "Intentionally" means that the actor either has a purpose to do the thing or cause the result specified or believes that the act performed by the actor, if successful, will cause that result. In addition * * * the actor must have knowledge of those facts which are necessary to make the actor's conduct criminal and which are set forth after the word "intentionally."
> (4) "With intent to" or "with intent that" means that the actor either has a purpose to do the thing or cause the result specified or believes that the act, if successful, will cause that result.

Minn.Stat. § 609.02, subd. 9. While we have not yet ruled whether under this statute a chapter 609 offense must be interpreted as a strict liability crime where it contains no language indicating intent or knowledge, in several opinions we have ruled on whether mere "possession" in various contexts requires a mens rea. In *State v. Siirila,* we affirmed a conviction under Minn.Stat. § 618.02 (1969), which stated "it shall be unlawful for any person to * * * possess * * * any narcotic drug" where appellants had an unusable quantity of marijuana. 292 Minn. 1, 10, 193 N.W.2d 467, 473 (1971). We observed that the legislature had reduced the crime of possession of a small amount of marijuana from a felony to a gross misdemeanor, *see id.* at 7, 193 N.W.2d at 471, and concluded

> the inference is permissible that, marijuana having been found in a jacket shown to belong to defendant and to have been worn by him, whatever was in the jacket was there with his knowledge. The element of knowledge need not be proved from direct testimony, but may be shown by circumstantial evidence.

*Id.* at 10, 193 N.W.2d at 473. Later, in *State v. Florine,* we held that the defendant was guilty under Minn.Stat. § 152.09, subd. 1(2) (1974), of the felony offense of unlawful possession of cocaine, but noted "to convict a defendant of unlawful possession of a controlled substance, the state must prove that defendant consciously possessed * * * the substance and that defen-

dant had actual knowledge of the nature of the substance." 303 Minn. 103, 104, 226 N.W.2d 609, 610 (1975).

Again in *State v. Strong,* we held that Minn.Stat. § 243.55 (1978 & Supp.1979), which provided "[a]ny person who brings * * * into any state correctional facility * * * any firearms, weapons or explosives of any kind * * * shall be guilty of a felony" required the state to show that the defendant had knowledge of possession of the offensive item. 294 N.W.2d 319, 320 n. 1 (Minn.1980). Because this was not a chapter 609 offense, we specifically declined to address whether section 609.02 cited above dispensed with proof of a mens rea in a chapter 609 offense absent words of intent. *See id.* at 320. We did observe however, that "most commentators have argued that the legislature should never use strict liability for crimes carrying a sentence of imprisonment and the moral condemnation going with such crimes." *Id.* (citing Wayne R. LaFave and Austin W. Scott, Jr., *Criminal Law,* § 31 at 218, 223 (1972)). We concluded:

> We see no reason why the element of scienter should be dispensed with in this situation and we are not convinced that the legislature intended to do so, any more than it intended to dispense with the requirement of scienter when it enacted the penalties for felonious possession of controlled substances.

*Id.*

■ In *Orsello* we considered whether a stalking statute, Minn.Stat. § 609.749 (1992 & Supp.1993), defined a crime of general or specific intent.[10] 554 N.W.2d at 72. We sought guidance from section 609.02, subd. 9, and concluded that the statute required specific intent because the terms "intentional conduct" and "in a manner that" indicate specific rather than general intent. *See id.* at 74. We observed

that "[a] criminal state of mind, or a criminal intent, is, of course, a necessary element of any crime having its origin in common law. * * * If the legislature chooses not to include an intent requirement in a statutory crime, one is implied as a matter of law." *Id.* at 72 (citation omitted). Finally, we recently held that Minn.Stat. § 169.122, subd. 3 (1998), which provides that "keep[ing]" an open bottle of alcohol in a vehicle on a highway is a misdemeanor, does not require the state to prove that the driver of a vehicle had knowledge of the existence of the open bottle containing intoxicating liquor. *See State v. Loge,* 608 N.W.2d 152, 153 (Minn. 2000).

The rulings of the United States Supreme Court and this court thus highlight the long established principle of American criminal jurisprudence that in common law crimes and in felony level offenses mens rea is required. Nonetheless, respondent argues that because Minn.Stat. § 609.02, subd. 9, specifically provides that if the legislature intends to include mens rea in a chapter 609 crime it must be evidenced in the statutory language by some form of the terms "knowledge," "belief" or "intent," and none appears in section 609.66, subd. 1d, it is clear that the legislature did not intend to include mens rea as an element of the crime charged.

■ In the context of Supreme Court and this court's criminal jurisprudence regarding the relationship of felony level offenses and mens rea, and our long accepted rules of statutory construction, we do not believe the expression of legislative intent of section 609.02, subd. 9, is so clear. We observe initially that the legislature never explicitly indicated that it intended to create a strict liability offense. The legislative discussion of the severe penalty[11] attached to the section 609.66, subd.

---

10. "General intent requires only that the defendant engaged intentionally in specific, prohibited *conduct* * * * In contrast, specific intent requires that the defendant acted with the intention to produce a specific *result,* such

as is the case in premeditated murder." *Orsello,* 554 N.W.2d at 72 (citation omitted).

11. "A severe penalty is a * * * factor tending to suggest that [the legislature] did not intend

1d, offense is an important factor in our analysis because it underscores that the weapon possession statute was intended to be more than merely regulatory–its legislative sponsor emphasized that the bill was intended to create and expand felony level penalties to include the possession of all dangerous weapons on school grounds.

■■ Further, section 609.02, subd. 9, definitions provide no clearer illumination as to the legislature's intent with respect to the weapon possession offense. The Supreme Court has suggested that some indication of legislative intent, whether express or implied, is required to dispense with mens rea as an element of a felony level crime. In *Staples,* the Court stated that if the legislature wanted to make "outlaws" of those possessing weapons while being completely ignorant of the offending characteristics of the weapons, it would have spoken clearly to that effect. 511 U.S. at 620, 114 S.Ct. 1793. Similarly, in *United States Gypsum,* the Court noted that "[c]ertainly far more than a simple omission of the appropriate phrase from the statutory definition is necessary to justify dispensing with an intent requirement." 438 U.S. at 438, 98 S.Ct. 2864. We have expressed similar concerns, for example in *Niesen* we stated that "we are guided by the public policy that if criminal liability, particularly gross misdemeanor or felony liability, is to be imposed for conduct unaccompanied by fault, the legislative intent to do so should be clear." 415

N.W.2d at 329.[12] We conclude that the "catch all" language of section 609.02, subd. 9, which provides that proof of intent with respect to the numerous criminal statutes included in chapter 609 is an element of the crime when the words "know," "intentionally," or "with intent to" are used is not a sufficiently clear expression of legislative intent to dispense with it with respect to the felony level crime charged here. If it is the legislature's purpose to convict a student for a felony for the unknowing possession of a knife on school property, it should say so directly and unequivocally with respect to that specific crime and not with the convenient but far less specific "if we did not say it we do not mean it."

■ The public welfare nature of the offense charged here is also an important consideration in our analysis. Certain items of property, for example unlicensed hand grenades, by their very nature suggest that possession is not innocent because possession itself is demonstrative of intent. *See Staples,* 511 U.S. at 609, 114 S.Ct. 1793 (citing *United States v. Freed,* 401 U.S. 601, 609, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971)). On the other hand, great care is taken to avoid interpreting statutes as eliminating mens rea where doing so criminalizes a broad range of what would otherwise be innocent conduct. *See id.* at 610, 91 S.Ct. 1112. In *Staples* the Court held that lawful gun ownership fell into the second category, pointing to

---

to eliminate the mens rea requirement." *Staples,* 511 U.S. at 618, 114 S.Ct. 1793.

**12.** Some states imposing a felony penalty on the possession of a weapon on school property require knowledge of possession. For example, in Illinois:

[a] person commits the offense of unlawful use of weapons when he *knowingly:*
* * * *

Carries or possesses on about his person any * * * switchblade knife * * * while in the building or on the grounds of any elementary or secondary school, community college, college or university.
* * * *

Any person convicted of [this] violation * * * commits a * * * felony.
720 Ill. Comp. Stat. 5/24 – 1(a)(12) & (b) (1998) (emphasis added).

We also note the federal statute with wording very similar to our weapon possession statute–the Gun–Free Schools Act of 1994– provides "each State receiving Federal funds under this chapter shall have in effect a State law requiring local educational agencies to expel from school for a period of not less than one year a student who is determined to have brought a weapon to school." *See* 20 U.S.C. § 8921(b)(1) (1998). At least with respect to gun-free school zones, Congress did not make knowledge a requirement of the violation but also did not impose a criminal sanction.

the tradition of gun ownership and the fact that guns have not historically been considered of such a dangerous nature that their owners should be on notice that mere possession is a crime. Applying this analysis to the facts here, we observe that knives as common household utensils are clearly not inherently dangerous, as they can be used for a myriad of completely benign purposes–for example peeling an orange or sharpening a pencil–and are certainly not as inherently anti-social as illegal drugs and hand grenades. Moreover, mere possession of something that may fit the statutory definition of "dangerous weapon"[13]–for example, a paring knife or scissors–would not create a level of panic, even on school property, that a "reasonable person should know [possession] is subject to stringent public regulation * * *." *Liparota,* 471 U.S. at 433, 105 S.Ct. 2084. In many if not most cases prosecuted under a statute proscribing occurrences on school property, we note further, the accused will be a school-aged minor.[14]

Thus we conclude that in light of our jurisprudential history requiring clear legislative intent to dispense with proof of mens rea and our heightened concern when it relates to felony level crimes, and because we believe the nature of the weapon here–a knife–was not so inherently dangerous that appellant should be on notice that mere possession would be a crime, respondent was required to prove that appellant knew he possessed the knife on

school property as an element of the section 609.66, subd. 1d, offense charged.[15]

We reverse the court of appeals decision and remand to the trial court to determine whether appellant had knowledge of possession of the knife while on school property.

Reversed.

GILBERT, Justice (concurring specially).

I concur with the result reached by the majority. However, I write separately to emphasize my concern about the majority opinion's new requirement that if the legislature intends to make a crime a strict liability offense, "it should say so directly and unequivocally." This new requirement deviates from our longstanding precedent relating to strict liability crimes that requires only that there be clear legislative intent to dispense with mens rea, rather than requiring a direct and unequivocal statement of intent to create a strict liability offense. *See State v. Neisen,* 415 N.W.2d 326, 329 (Minn.1987). We have held that clear intent to create a strict liability offense can come from interpreting the statute as a whole, *see State v. Loge,* 608 N.W.2d 152, 155–56 (Minn.2000). While we were interpreting a misdemeanor statute in *Loge,* the requirement that intent be clear comes from *Neisen,* in which we stated the rule was particularly appropriate for "gross misdemeanor or felony liability." 415 N.W.2d at 329. In effect and contrary to our precedent, the

---

13. A "dangerous weapon" is defined as:

any firearm, whether loaded or unloaded, or any device designed as a weapon and capable of producing death or great bodily harm, any combustible or flammable liquid or other device or instrumentality that, in the manner it is used or intended to be used, is calculated or likely to produce death or great bodily harm, or any fire that is used to produce death or great bodily harm.

Minn.Stat. § 609.02, subd. 6 (1998).

14. We express a note of concern regarding the court of appeals' comment that the statute

was a strict liability offense because of the mild penalty imposed on appellant. The fact that appellant received a light sentence is of no consequence in the determination of whether mens rea is required under the statute because obviously the state's burden of proof of guilt cannot be determined by the level of sentence the trial court later imposes.

15. The special concurrence obviously misreads and overstates the majority holding when it suggests that we are creating a new standard requiring the legislature to explicitly state its intent to create strict liability offenses in all felony level crimes.

majority unnecessarily adopts a per se rule that absent a direct and unequivocal statement obviating the need to prove intent, no felony criminal statute can be interpreted to create a strict liability offense. This change in our law is an unnecessary departure where here, after looking for and failing to find an express statement, the majority engages in the very analysis which it declares is unnecessary: it looks at the statute as a whole and concludes that there is not clear legislative intent to enact a strict liability offense.