**STATE of Minnesota, Respondent,**

v.

**Christian Chi NDIKUM, Appellant.**

**No. A10–1728.**

Court of Appeals of Minnesota.

Aug. 15, 2011.

Lori Swanson, Attorney General, St. Paul, MN, Michael O. Freeman, Hennepin County Attorney, Michael Richardson, Assistant County Attorney, Minneapolis, MN, for respondent.

William M. Orth, Minneapolis, MN, for appellant.

Considered and decided by
BJORKMAN, Presiding Judge;
HALBROOKS, Judge; and HUDSON, Judge.

## OPINION

HUDSON, Judge.

Appellant challenges his conviction of gross-misdemeanor possession of a pistol without a permit, contending that the jury instructions were legally erroneous. Because the jury instructions permitted the jury to convict appellant without finding that appellant knew that he was in possession of a pistol, we reverse and remand for a new trial.

## FACTS

This case arises out of an incident during which appellant Christian Chi Ndikum entered the Hennepin County Family Justice Center with a briefcase containing a loaded handgun. Appellant was arrested and charged with three offenses: (1) felony possession of a dangerous weapon in a courthouse in violation of Minn.Stat. § 609.66, subd. 1g (2008); (2) gross-misdemeanor possession of a pistol in a public place without a permit in violation of Minn. Stat. § 624.714, subd. 1a (2008)[1]; and (3) misdemeanor reckless handling of a dangerous weapon in violation of Minn.Stat. § 609.66, subd. 1(a)(1) (2008). The case was tried to a jury.

On July 23, 2009, appellant, who is a licensed attorney, purchased a Ruger revolver to protect himself while traveling to and from his office on Lake Street in Minneapolis. Appellant obtained a permit to purchase the handgun, but he did not secure a permit to carry it. Appellant carried the handgun back and forth between his home and office and left it in his vehicle when he made stops along his route.

On September 9, 2009, appellant entered the Hennepin County Family Justice Center for a settlement conference. Appellant placed his briefcase on the x-ray machine and walked through the metal detector. A sheriff's deputy advised appellant that a weapon had been detected in appellant's briefcase. The sheriff's deputy and appellant provided conflicting testimony about the conversation that followed.

According to the sheriff's deputy, appellant stated that he carried a revolver to protect himself and that he had forgotten to leave it in his vehicle. According to appellant, however, he told the sheriff's deputy that he owned a revolver, but that he did not know that it was in his briefcase. The sheriff's deputy and appellant each disputed the other's account of the conversation. It is undisputed, however, that a case containing a holster with a loaded Ruger revolver was inside appellant's briefcase.

Appellant testified that he last saw the revolver around September 4, 2009, when he had shown it to his brother-in-law. Appellant testified that he did not see the revolver after that date, nor did he carry it to his office. Appellant's wife testified that, on September 8, 2009, she noticed

1. The current version of Minn.Stat. § 624.714, subd. 1a, is identical to the version that was applicable at the time of the offense.

that appellant's files were strewn around their living room and that the case containing the revolver was under their sofa. Appellant's wife testified that she proceeded to pack appellant's briefcase, placing the case containing the revolver in the bottom of appellant's briefcase and placing appellant's files on top. She testified that she did not tell him what she had done because she normally packed appellant's briefcase and because she had placed the revolver where appellant ordinarily kept it. Appellant testified that between September 8 and 9, 2009, he opened the briefcase multiple times, but that, because the briefcase was quite large, he did not see the case containing the revolver.

Prior to trial, appellant requested that the applicable standard jury instructions, CRIMJIG 32.23 (possession of a dangerous weapon in a courthouse) and CRIMJIG 32.37 (possession of a pistol without a permit) be modified to state that appellant must have known that he was in possession of the revolver to be convicted of both offenses. The district court granted the requested modification with regard to CRIMJIG 32.23 (possession of a dangerous weapon in a courthouse), but denied it with regard to CRIMJIG 32.37 (possession of a pistol without a permit). The district court reasoned that the legislature intended to omit a knowledge requirement for possession of a pistol without a permit, but not for possession of a dangerous weapon in a courthouse.

The jury found appellant not guilty of possessing a dangerous weapon in a courthouse and not guilty of recklessly handling a dangerous weapon. But the jury found appellant guilty of possessing a pistol without a permit. Appellant filed a motion for a judgment of acquittal, or, in the alternative, a new trial, both of which the district court denied. The district court sentenced appellant to 365 days in the workhouse, stayed 364 days, with credit for one day served. This appeal follows.

## ISSUE

Did the district court commit reversible error by refusing to instruct the jury that appellant must have known that he was in possession of a pistol to be convicted of gross-misdemeanor possession of a pistol without a permit in violation of Minn.Stat. § 624.714, subd. 1a?

## ANALYSIS

■ This court reviews the refusal to give a requested jury instruction for an abuse of discretion. *State v. Cole,* 542 N.W.2d 43, 50 (Minn.1996). Appellant contends that the district court abused its discretion by refusing to instruct the jury that, to convict appellant of carrying a pistol without a permit under Minn.Stat. § 624.714, subd. 1a, the jury must find that appellant knew that he was in possession of the revolver. *See id.* (finding an abuse of discretion because of legal error). The resolution of this issue requires a close examination of the statute.

The construction of a statute is a legal determination subject to de novo review. *State v. Carufel,* 783 N.W.2d 539, 542 (Minn.2010). The object of statutory construction is "to ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2010); *State v. Gaiovnik,* 794 N.W.2d 643, 647 (Minn.2011). Accordingly, statutory construction begins with the plain language of the statute: if the words of the statute are unambiguous, this court engages in no further construction. *State v. Holmes,* 778 N.W.2d 336, 339 (Minn. 2010).

Minn.Stat. § 624.714, subd. 1a, states, in relevant part, that

[a] person, other than a peace officer ... who carries, holds, or possesses a pistol ... on or about the person's

clothes or the person, or otherwise in possession or control in a public place ... without first having obtained a permit to carry the pistol is guilty of a gross misdemeanor.

The statute is silent as to the mens rea—if any—required for a conviction of carrying a pistol without a permit. But the effect of the legislature's silence is unclear: appellant contends that it should be interpreted as requiring proof of a mens rea, whereas the state responds that it should be interpreted as imposing strict criminal liability.

This case is governed by our supreme court's decision in *In re Welfare of C.R.M.*, which involved a juvenile's felony conviction of possessing a dangerous weapon on school property. 611 N.W.2d 802, 803 (Minn.2000). The district court found that the juvenile unwittingly brought a pocket knife to school, but, based on its conclusion that the relevant statute did not include a mens rea requirement, the district court nonetheless convicted him of possessing a dangerous weapon on school property. *Id.* at 804. This court affirmed, but the Minnesota Supreme Court reversed. *Id.* at 803–04.

The supreme court acknowledged that the legislature is authorized to create strict liability criminal offenses, but emphasized that "[t]he legislative intent to impose strict criminal liability must be clear." *Id.* at 805. The supreme court stated that a criminal statute will only be found to impose strict liability after a "careful and close examination of the statutory language" and application of "the rule of lenity requiring penal statutes to be strictly construed in favor of a criminal defendant." *Id.* (quotation omitted). In reversing the conviction, the supreme court relied in part on the fact that "the legislature never explicitly indicated that it

intended to create a strict liability offense." *Id.* at 808.

The supreme court also explained that the nature of the offense and the severity of the punishment suggested that the legislature did not intend to impose strict criminal liability. *See id.* at 808–10 (citing *Staples v. United States*, 511 U.S. 600, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994)). The supreme court noted that "great care is taken to avoid interpreting statutes as eliminating mens rea where doing so criminalizes a broad range of what would otherwise be innocent conduct." *Id.* at 809 (citing *United States v. Freed*, 401 U.S. 601, 610, 91 S.Ct. 1112, 1118, 28 L.Ed.2d 356 (1971)). The supreme court concluded that, because knives are common household utensils that are not inherently dangerous, the mere possession of a knife—even on school property—is not the type of public welfare offense that " 'a reasonable person should know ... is subject to stringent public regulation.' " *Id.* at 810 (quoting *Liparota v. United States*, 471 U.S. 419, 433, 105 S.Ct. 2084, 2092, 85 L.Ed.2d 434 (1985)). The supreme court also emphasized that "[t]he rulings of the United States Supreme Court and this court ... highlight the long established principle ... that in common law crimes and in felony level offenses mens rea is required." *Id.* at 808. The supreme court therefore concluded that, because the possession of a dangerous weapon on school grounds was classified as a felony, the legislature intended for the offense to be "more than merely regulatory" and not to be a strict liability offense. *Id.* at 808–09.

Likewise, in enacting Minn.Stat. § 624.714, subd. 1a, the legislature did not clearly indicate whether it intended to impose strict criminal liability for a violation. Thus, like the supreme court in *C.R.M.*, we must determine whether Minn.Stat. § 624.714, subd. 1a, is a public welfare

statute for which the legislature may impose strict criminal liability without saying so explicitly. We conclude that it is not.

First, we are bound to conclude that a handgun is not so inherently dangerous that appellant should be subject to strict criminal liability for carrying his revolver without a permit. In *C.R.M.*, our supreme court heavily relied on *Staples*, a case in which the United States Supreme Court concluded that a statute criminalizing the possession of an unregistered machine gun could not be interpreted to impose strict liability on a defendant who did not know that his rifle had been converted into a machine gun. *C.R.M.*, 611 N.W.2d at 806–07 (citing *Staples*, 511 U.S. at 611–20, 114 S.Ct. at 1800–04). In *Staples*, the Supreme Court specifically held that "[g]uns in general are not deleterious devices or products or obnoxious materials that put their owners on notice that they stand in responsible relation to a public danger." *Staples*, 511 U.S. at 611, 114 S.Ct. at 1800 (quotations omitted). Although the Supreme Court acknowledged that guns could be considered dangerous in a general sense, it explained that "[e]ven dangerous items can, in some cases, be so commonplace and generally available that we would not consider them to alert individuals to the likelihood of strict regulation." *Id.* We question the Supreme Court's conclusion that, in this era, handgun owners are unlikely to realize that they may be subject to strict regulation, but our supreme court has adopted the reasoning in *Staples*, and we are therefore compelled to follow it.

Next, we conclude that the possession of a pistol without a permit is the type of serious offense for which the legislature must clearly impose strict liability. In *C.R.M.*, the supreme court specifically stated that it was " 'guided by the public policy that if criminal liability, particularly *gross misdemeanor or felony liability,* is to be imposed for conduct unaccompanied by fault, the legislative intent to do so should be clear.' " *C.R.M.*, 611 N.W.2d at 809 (emphasis added) (quoting *State v. Neisen*, 415 N.W.2d 326, 329 (Minn.1987)). The state counters that, in *State v. Siirila*, a case that involved a prosecution for possession of an unusable amount of marijuana, our supreme court recognized the legislature's authority to impose strict liability for gross-misdemeanor offenses. 292 Minn. 1, 193 N.W.2d 467 (1971). But in *Siirila*, the supreme court did not conclude that the statute lacked a mens rea requirement; the supreme court assumed that the statute required proof that the defendant knew that he was in possession of marijuana and concluded that the knowledge element need not be proved by direct evidence, but could instead be shown by circumstantial evidence, such as the fact that the defendant owned the jacket in which the marijuana was found. 292 Minn. at 10, 193 N.W.2d at 473. We therefore rely on *C.R.M.* to conclude that, to impose strict criminal liability for possessing a pistol without a permit, a gross misdemeanor which carries a maximum sentence of one year imprisonment, the legislature must have clearly indicated its intention to do so. *See* Minn.Stat. § 609.02, subd. 4 (2008) (defining a gross misdemeanor as any crime that is not a misdemeanor or a felony).

The state contends that this court should instead adopt the reasoning of *State v. Loge*, which involved a driver's misdemeanor conviction of driving with an open container of alcohol in a vehicle. 608 N.W.2d 152 (Minn.2000). In *Loge*, the defendant was charged with "keep[ing] or allow[ing] to be kept" an open bottle of beer in a vehicle that he was driving along a public highway, in violation of Minn.Stat. § 169.122, subd. 3 (1998). *Id.* at 153. The defendant testified that he did not know

that the open beer bottle was in the vehicle, which he had borrowed from his father. *Id.* The district court concluded that the defendant was subject to strict criminal liability. *Id.* at 153. This court affirmed, as did the supreme court. *Id.* at 153, 158–59.

In its opinion, the supreme court focused on the plain language of the relevant statute. *Id.* at 154–56. The supreme court noted that the statute identifies two alternate situations in which a driver could be held liable for an open-container violation: the driver could either "possess" the open container in the vehicle in violation of subdivision 2 or he could "keep" the open container or "allow [it] to be kept" in the vehicle in violation of subdivision 3. *Id.* (quoting Minn.Stat. § 169.122, subds. 2, 3 (1998)). The court interpreted subdivision 2 to prohibit "actual possession of, or conscious exercise of dominion and control over, an open bottle of alcohol by any person in the vehicle," but it read subdivision 3 to require the driver to "ensure[ ] that no open bottles of alcohol are present in a vehicle on a public highway, regardless of consumption, actual possession or conscious exercise of dominion and control." *Id.* at 156. The supreme court concluded that, because the defendant had been charged under subdivision 3, the state was not required to prove that the defendant knew that the open beer bottle was in the vehicle to obtain a conviction. *Id.* at 158.

The statute at issue in *Loge* is distinguishable from the statute at issue here. In *Loge*, the supreme court concluded that "[t]he 'to keep' an open bottle language of subdivision 3 means more than knowing[ly] continuing possession because such conduct is already made illegal by subdivision 2." *Id.* at 158. The supreme court added that to conclude otherwise "would render subdivision 3 mere surplusage and would

violate the statutory presumption that the legislature intends an entire statute to be effective and certain." *Id.* In this case, in contrast, the state has not pointed to any language in Minn.Stat. § 624.714 that would illuminate the legislature's reason for failing to state clearly whether it intended to establish a knowledge requirement or impose strict liability for possession of a pistol without a permit. Thus, the reasoning employed in *Loge* simply is not applicable here.

## DECISION

Based on precedent, we conclude that the district court erred in failing to instruct the jury that the state must prove that appellant knew that he was in possession of his revolver in order to be guilty of possessing a pistol without a permit.

**Reversed and remanded.**