STATE of Minnesota, Appellant,

v.

Stacy Marie ROHAN, Respondent.

No. A12–2256.

Court of Appeals of Minnesota.

July 22, 2013.

Lori Swanson, Minnesota Attorney General, St. Paul, MN; and Samuel J. Edmunds, Alina Schwartz, Campbell Knutson, P.A., Eagan, MN, for appellant.

Lynne Torgerson, Minneapolis, MN, for respondent.

Considered and decided by STONEBURNER, Presiding Judge; JOHNSON, Chief Judge; and WILLIS, Judge.

## OPINION

WILLIS, Judge.*

In this pretrial appeal, the state argues that the district court erred by finding respondent's right to substantive due process requires that an intent requirement be read into Minn.Stat. § 340A.503, subd. 2(1). Because section 340A.503, subdivision 2(1), creates a strict-liability offense and does not violate due-process rights, we reverse and remand.

## FACTS

On November 14, 2011, respondent Stacy Marie Rohan was working at a restaurant in Burnsville, Minnesota. Two undercover police officers accompanied by a

woman under the age of 21 sat in the bar area of the restaurant and ordered beer. Respondent checked each person's identification and then served beer to the underage woman. The underage woman's identification showed her correct age. Respondent was charged with serving alcohol to an underage person, in violation of Minn.Stat. § 340A.503, subd. 2(1).

Respondent moved the district court for an order either invalidating the statute under the due-process clauses of the United States and Minnesota constitutions or directing that, to obtain a conviction, the state must prove that respondent intentionally violated the law. The district court held that respondent could not be held strictly liable under the statute without violating her due-process rights. It issued an order requiring the state to prove that respondent intentionally violated the statute.

The state then brought the present appeal, under Minn.R.Crim. P. 28.04, subd. 1(1).

## ISSUES

I. Did the district court err in construing Minn.Stat. § 340A.503, subd. 2(1) (2010), to include an intent element?

II. Did the district court err in holding that prosecuting the respondent under Minn.Stat. § 340A.503, subd. 2(1), would violate her right to due process unless the statute is read to include an intent element?

## ANALYSIS

█ As a threshold matter, we consider whether the district court's order is immediately appealable. Under the Minnesota Rules of Criminal Procedure, the state

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

may appeal an adverse pretrial ruling. Minn.R.Crim. P. 28.04, subd. 1(1). But to obtain review, the state must "clearly and unequivocally" show that the order will have a "critical impact" on the state's case. *State v. Scott*, 584 N.W.2d 412, 416 (Minn. 1998) (quotation omitted). Upon such a showing, this court may proceed to determine whether the pretrial ruling was erroneous. *Id.*

Requiring the state to prove intent to violate the statute at issue here clearly and unequivocally has a critical impact on the state's case. The district court's ruling would require the state to prove an element of the offense that does not appear on the face of the statute. The state has satisfied the critical-impact requirement, and we may consider the present appeal. *See State v. Zais*, 805 N.W.2d 32, 36 (Minn.2011) (instructing that critical impact exists when district court's order "significantly reduces the likelihood of a successful prosecution") (quotations omitted).

Having concluded that this pretrial appeal is proper, we turn to the substantive issues raised by the state. Because respondent's constitutional argument is contingent on our determination of whether Minn.Stat. § 340A.503, subd. 2(1), includes an intent requirement, we first address the statutory-interpretation issue. *See Rickert v. State*, 795 N.W.2d 236, 240 (Minn. 2011) ("Generally, we will not address a constitutional issue if there is another basis upon which the case can be decided.").

## I. Serving alcohol to underage persons is a strict-liability crime in Minnesota.

The district court concluded that the legislature did not intend for Minn. Stat. § 340A.503, subd. 2(1), to impose strict criminal liability. Determining the presence or absence of an intent, or mens rea, element in a criminal statute calls for statutory interpretation. *United States v. Balint*, 258 U.S. 250, 251–52, 42 S.Ct. 301, 302, 66 L.Ed. 604 (1922). Statutory interpretation is a question of law and is reviewed de novo. *State v. Ndikum*, 815 N.W.2d 816, 818 (Minn.2012).

"Mens rea is the element of a crime that requires 'the defendant know the facts that make his conduct illegal.'" *Id.* at 818 (quoting *Staples v. United States*, 511 U.S. 600, 605, 114 S.Ct. 1793, 1796–97, 128 L.Ed.2d 608 (1994)). "Statutes that dispense with mens rea and 'do not require the defendant to know the facts that make his conduct illegal' impose strict criminal liability." *Id.* (quoting *Staples*, 511 U.S. at 606, 114 S.Ct. at 1793).

Relying on United States Supreme Court precedent disfavoring offenses that do not require mens rea, the Minnesota Supreme Court has stated that it is "guided by the public policy that if criminal liability, particularly gross misdemeanor or felony liability, is to be imposed for conduct unaccompanied by fault, the legislative intent to do so should be clear." *State v. Neisen*, 415 N.W.2d 326, 329 (Minn. 1987). The court has thus instructed that, except with respect to statutes creating public-welfare offenses, "some positive indication of legislative intent is required to dispense with mens rea." *Ndikum*, 815 N.W.2d at 818–19 (citing *Staples*, 511 U.S. at 620, 114 S.Ct. at 1793). Applying this principle, the Minnesota Supreme Court has read intent elements into statutes imposing gross-misdemeanor or felony liability for possessing firearms or other weapons in certain locations. *Ndikum*, 815 N.W.2d at 822 (possession of a pistol in public); *In re Welfare of C.R.M.*, 611 N.W.2d 802, 810 (Minn.2000) (possession of a knife at school).

Were we addressing the issue raised in this case as a matter of first

impression, our analysis would properly begin with an application of the principles enunciated in the supreme court's recent decision in *Ndikum* to determine whether intent is a required element of a violation of Minn.Stat. § 340A.503, subd. 2(1).[1] But when the supreme court has already construed a statute, this court is bound by that interpretation. *Jendro v. Honeywell, Inc.,* 392 N.W.2d 688, 691 n. 1 (Minn.App. 1986), *review denied* (Minn. Nov. 19, 1989). Moreover, we must presume that "when a court of last resort has construed the language of a law, the legislature in subsequent laws on the same subject matter intends the same construction to be placed upon such language." Minn.Stat. § 645.17 (2012); *see also* Minn.Stat. § 645.16 (2012) (when interpreting legislative intent, this court may look to "the former law, if any, including other laws upon the same or similar subjects"). Similarly, when the legislature fails to amend a statute that has been interpreted by the supreme court, the legislature is deemed to have acquiesced to that interpretation. *See Engquist v. Loyas,* 803 N.W.2d 400, 406 (Minn.2011) (stating that, because legislature did not amend statute in response to supreme court's interpretation, "we assume that the Legislature has acquiesced in our interpretation"); *State, Dep't of Pub. Safety v. Ogg,* 310 Minn. 433, 436, 246 N.W.2d 560, 562 (1976) (stating that legislature's failure to amend statute following interpretation despite "several" intervening legislative sessions suggests acquies-

cence). Here, the interpretation to be given to Minn.Stat. § 340A.503, subd. 2(1), is supplied by the history of the statute and the caselaw construing it.

▉ The sale of liquor to underage persons has been illegal in Minnesota for 141 years.[2] On March 4, 1872, the state legislature enacted a statute providing that "[i]t shall be unlawful for any person to sell, give, barter, furnish, or dispose of ... fermented or malt liquors ... to any minor person, pupil or student ..., or habitual drunkard." 1872 Minn. Laws ch. 41, § 11, at 127–28 (codified as amended at Minn.Gen.Stat. ch. 16, § 10 (1878)). Several years later, in a case involving the sale of liquor to a "habitual drunkard," the supreme court was called on to determine whether intent was an element of the statute. *See State v. Heck,* 23 Minn. 549, 550 (1877). The supreme court held that it was not. *Id.* The court stated that "when, without reference to intent, the statute forbids the doing of an act in certain circumstances, and a party is under no obligation to do it, ... if he does the forbidden act he violates the law, irrespective of his knowledge or ignorance of the circumstances mentioned." *Id.*

After *Heck,* the statute governing alcohol sales to underage persons was understood to impose strict liability. In 1936, the Minnesota Attorney General was asked what precautions a business could take to avoid liability under the law. Minn. Op. Att'y Gen.No. 302 (1936), *cited in Neisen,*

---

1. Under that analysis, statutes that are silent on the issue of intent are presumed to require proof of mens rea unless they create public-welfare offenses. *Ndikum,* 815 N.W.2d at 819–20. We question whether Minn.Stat. § 340A.503 is "silent" on the issue of intent, particularly given the legislature's inclusion of the carding defense, which would not be necessary if the state were required to prove intent as an element of the offense. We need not resolve this issue, however, because we

conclude that our decision in this appeal is controlled by existing Minnesota Supreme Court precedent.

2. Before 1872, the parent of a minor could provide a tavern keeper with written notice that the minor was not to be served alcohol, and the service of alcohol to the minor after such notice was a crime. Minn.Gen.Stat. ch. 16, § 10 (1866).

415 N.W.2d at 328. The attorney general responded that, "[r]egardless of the precaution taken, if a sale was made to a customer under the age of 21 years the seller would be guilty of violation of this statutory provision." *Id.*

During the century following the *Heck* decision, the legislature amended the statute governing underage alcohol sales multiple times. *See, e.g.,* 1947 Minn. Laws ch. 87, § 1; 1949 Minn. Laws ch. 415, § 1; 1953 Minn. Laws ch. 483, §§ 1, 2. But none of the amendments added an intent requirement. In 1957, the legislature amended the statute to provide an affirmative defense, known as the "carding defense," which excused from criminal liability sellers who could prove that they made a good-faith attempt to determine that a buyer was of age. *See* 1957 Minn. Laws ch. 823, § 1, at 1164–65 (codified at Minn. Stat. § 340.942 (1957)). Importantly, this defense would have been unnecessary if the state carried the burden to prove that a defendant knew that the buyer was underage.

In 1985, the legislature cleared the board, repealing the then-existing statute and replacing it with Minn.Stat. § 340A.503. *See* 1985 Minn. Laws. ch. 305, art. 13, § 1. The newly codified version omitted the affirmative-defense provision, but added a provision governing the methods by which a purchaser's age could be proved. *Neisen,* 415 N.W.2d at 328–29 (citing Minn.Stat. § 340A.503 (1986)).

In *Neisen,* decided 100 years after *Heck,* the supreme court held that the recodified statute was ambiguous and concluded that,

despite the omission of the affirmative-defense language, the legislature intended to preserve the carding defense. 415 N.W.2d at 329. In so holding, the court expressly reinforced its holding in *Heck,* stating that "the state does not have to prove the defendant knew the purchaser was underage" in order to prove a violation of the statute prohibiting alcohol sales to underage persons. *Id.* at 328–329.[3]

The legislature has amended Minn.Stat. § 340A.503 more than once since *Neisen. See, e.g.,* 1989 Minn. Laws ch. 301, § 14; 1990 Minn. Laws ch. 602, art. 5, §§ 2–4; 1991 Minn. Laws ch. 68, § 1. But like other amendments following *Heck,* none of the legislative amendments since *Neisen* has introduced an intent element. In fact, in 1989, the legislature amended the statute to once again include an express carding defense, which, as we note above, would not be necessary if the statute included an intent requirement. *See* 1989 Minn. Laws ch. 301, § 14. *Neisen's* statements on the issue of intent remain the law, and we are bound by the supreme court's interpretation of the statute. *Jendro,* 392 N.W.2d at 691 n. 1. The district court's holding that Minn.Stat. § 340A.503, subd. 2(1), is not a strict-liability crime is contrary to long-standing precedent and is erroneous.

**II. The due-process requirements of the United States and Minnesota constitutions do not require that criminal statutes include an intent element.**

▮ The district court held that respondent's right to due process would be

---

**3.** At oral argument, respondent argued that this language in *Neisen* is dictum. But absent strict liability, there would have been no need for the supreme court to find an implied carding defense. Therefore, the supreme court's assertion that the statute did not require a showing of intent was necessary to its holding

and was not dictum. *See State v. Misquadace,* 629 N.W.2d 487, 490 n. 2 (Minn.App.2001) ("Dictum is a statement in an opinion that could have been eliminated without impairing the result of the opinion."), *aff'd,* 644 N.W.2d 65 (Minn.2002).

violated if Minn.Stat. § 340A.503, subd. 2(1), is construed to impose strict criminal liability. The constitutionality of a statute is a question of law, subject to de novo review. *In re Conservatorship of Foster,* 547 N.W.2d 81, 84–85 (Minn.1996).

 Both the Minnesota and federal constitutions prohibit the state from depriving a criminal defendant of "life, liberty or property without due process of law." U.S. Const. amend. XIV, § 1; Minn. Const. art I, § 7. Minnesota is "free to interpret the Minnesota Constitution as affording greater protection ... than the United States Constitution," but our courts " 'will [not] cavalierly construe our constitution more expansively than the United States Supreme Court has construed the federal constitution.' " *State v. Askerooth,* 681 N.W.2d 353, 361–62 (Minn.2004) (quoting *State v. Fuller,* 374 N.W.2d 722, 726–27 (Minn.1985)). It is well established that the due-process clause of the Minnesota Constitution does not extend greater protection against governmental interference than the Due Process Clause of the Fourteenth Amendment. *Kahn v. Griffin,* 701 N.W.2d 815, 826 (Minn.2005) (citing *Anderson v. City of St. Paul,* 226 Minn. 186, 190, 32 N.W.2d 538, 541 (1948)). *But see State v. Guminga,* 395 N.W.2d 344, 349 (Minn.1986) (striking down a statute "specifically and exclusively" under Minn. Const. art. I, § 7, while expressing confidence that the United States Supreme Court would take the same action under the Fourteenth Amendment).

 The state's police power encompasses those "powers of government inherent in every sovereignty." *Nebbia v. New York,* 291 U.S. 502, 524, 54 S.Ct. 505, 510, 78 L.Ed. 940 (1934) (quotation omitted). An act criminalizing the sale of liquor to minors is an exercise of police power. *State v. Shevlin–Carpenter Co.,* 99 Minn. 158, 166–67, 108 N.W. 935, 938

(1906), *aff'd,* 218 U.S. 57, 30 S.Ct. 663, 54 L.Ed. 930 (1910); *see also Anderson,* 226 Minn. at 190–91, 32 N.W.2d at 541 (stating that "[s]elling intoxicating liquor for use as a beverage is a mere privilege subject to the police power of the state" and describing the broad authority of the government to regulate and even prohibit the sale of alcohol).

 A state may invoke its police power to enact a criminal statute that does not include an element of intent without violating due process. *Balint,* 258 U.S. at 252, 42 S.Ct. at 302; *see also Pacific Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 15, 111 S.Ct. 1032, 1041, 113 L.Ed.2d 1 (1991) ("[I]mposing such liability is not fundamentally unfair and does not in itself violate the Due Process Clause.").

In *Shevlin–Carpenter Co.,* the Minnesota Supreme Court was asked to declare invalid under state and federal due-process provisions a statute establishing a strict-liability felony and a civil penalty for harvesting lumber from state-owned land without a valid license. 99 Minn. at 160–61, 108 N.W. at 935. The court held that the provision was a constitutional exercise of police power and expressly compared it "to the statutes prohibiting the sale of liquor to minors" and other strict-liability offenses. *Id.* at 166–67, 108 N.W. at 938. It held that "[i]n so dispensing with the wrongful intent, the Legislature violated no constitutional right of the citizen, and the statute must be enforced." *Id.* at 167, 108 N.W. at 938. The United States Supreme Court affirmed and referred to the examples of valid exercises of police power that the Minnesota Supreme Court had enumerated. *Shevlin–Carpenter Co. v. Minnesota,* 218 U.S. 57, 69–70, 30 S.Ct. 663, 666–67, 54 L.Ed. 930 (1910). The Supreme Court noted that, while "such legislation may, in particular instances, be harsh, ... this court cannot set aside legis-

lation because it is harsh." *Id.* at 70, 30 S.Ct. at 667.

Here, the district court cited a number of state and federal decisions for the proposition that due process requires criminal intent to be imputed in a statute that is silent on the issue. Our review of those cases shows that they were not decided on due-process grounds but rather as matters of statutory interpretation. They do not, therefore, support the district court's ruling that respondent's due-process rights would be violated if Minn.Stat. § 340A.503, subd. 2(1), imposes strict criminal liability. *See, e.g., Staples v. United States,* 511 U.S. 600, 605, 114 S.Ct. 1793, 1796–97, 128 L.Ed.2d 608 (1994) ("[W]e have long recognized that determining the mental state required for commission of a federal crime requires 'construction of the statute and ... inference of the intent of Congress.' " (quoting *Balint,* 258 U.S. at 253, 42 S.Ct. at 302)); *Ndikum,* 815 N.W.2d at 818; *C.R.M.,* 611 N.W.2d at 805.

Respondent also argues that the statute violates due process under *Guminga,* 395 N.W.2d at 349. *Guminga* struck down a statute imposing *vicarious* strict liability on a business owner when an employee sold alcohol to an underage person. *Id.* In doing so, the supreme court noted that "it is a deterrent enough that *the employee who sells to the minor can be charged under the statute* and that the business is subject to fines or the suspension or revocation of license." *Id.* (emphasis added). *Guminga* held that "no one can be convicted of a crime punishable by imprisonment for an act he did not commit, did not have knowledge of, or give express or implied consent to the commission thereof." *Id.*

*Guminga* is not applicable here. This case involves the application of direct, not vicarious, strict liability. Respondent herself allegedly committed the act for which

she may be convicted. Furthermore, *Guminga* indicated that "the employee who sells to the minor" could be charged under the statute. *Id.* The state alleges that respondent is such an employee.

The district court erred in holding that respondent's right to due process required it to read an element of intent into Minn. Stat. § 340A.503, subd. (2)(1).

## DECISION

The state may create strict-liability crimes without violating the due-process clauses of the United States and Minnesota constitutions. The prohibition on the sale of alcohol to underage persons is such a crime. The district court's holding to the contrary was error.

**Reversed and remanded.**

JOHNSON, Chief Judge (dissenting).

I respectfully dissent from the opinion of the court. In my view, the supreme court's caselaw requires the state to prove that Rohan possessed some form of *mens rea* at the time she committed the gross-misdemeanor offense with which she is charged.

The central question in this appeal is whether section 340A.503, subdivision 2(1), of the Minnesota Statutes creates a "public welfare offense" or, more specifically, the type of public-welfare offense for which proof of *mens rea* is not required. The supreme court recently provided the framework of our analysis in *State v. Ndikum,* 815 N.W.2d 816 (Minn.2012). Because " 'offenses that require no mens rea generally are disfavored,' " the supreme court requires "some positive indication of legislative intent" that proof of *mens rea* is not required. *Id.* at 818–19 (quoting *Staples v. United States,* 511 U.S. 600, 606, 114 S.Ct. 1793, 1797, 128 L.Ed.2d 608 (1994)). Only "in limited circumstances,"

specifically, prosecutions based on "statutes creating 'public welfare' offenses," does the supreme court interpret a statute lacking an express *mens rea* requirement to be a statute that " 'impose[s] a form of strict criminal liability.' " *Id.* at 819 (quoting *Staples,* 511 U.S. at 606–07, 114 S.Ct. at 1797–98). In this case, the relevant statute is silent as to whether proof of *mens rea* is required. *See* Minn.Stat. § 340A.503, subd. 2(1) (2010).

In the vivid words of Justice Jackson, the offenses known as "public welfare offenses"

> do not fit neatly into any of such accepted classifications of common-law offenses, such as those against the state, the person, property, or public morals. Many of these offenses are not in the nature of positive aggressions or invasions, with which the common law so often dealt, but are in the nature of neglect where the law requires care, or inaction where it imposes a duty. Many violations of such regulations result in no direct or immediate injury to person or property but merely create the danger or probability of it which the law seeks to minimize. While such offenses do not threaten the security of the state in the manner of treason, they may be regarded as offenses against its authority, for their occurrence impairs the efficiency of controls deemed essential to the social order as presently constituted. In this respect, whatever the intent of the violator, the injury is the same, and the consequences are injurious or not according to fortuity. Hence, legislation applicable to such offenses, as a matter of policy, does not specify intent as a necessary element. The accused, if he does not will the violation, usually is in a position to prevent it with no more care than society might reasonably expect and no more exertion than it might reasonably exact

from one who assumed his responsibilities. Also, penalties commonly are relatively small, and conviction does no grave damage to an offender's reputation. Under such considerations, courts have turned to construing statutes and regulations which make no mention of intent as dispensing with it and holding that the guilty act alone makes out the crime. This has not, however, been without expressions of misgiving.

*Morissette v. United States,* 342 U.S. 246, 255–56, 72 S.Ct. 240, 246, 96 L.Ed. 288 (1952), *quoted in In re Welfare of C.R.M.,* 611 N.W.2d 802, 806 (Minn.2000), *and State v. Morse,* 281 Minn. 378, 383–84, 161 N.W.2d 699, 702–03 (1968). Justice Jackson also noted that no court had "undertaken to delineate a precise line or set forth comprehensive criteria for distinguishing between crimes that require a mental element and crimes that do not" and that "the law on the subject is neither settled nor static." *Morissette,* 342 U.S. at 260, 72 S.Ct. at 248.

Despite the uncertainty as to when proof of *mens rea* is required, the Minnesota caselaw is clear about one aspect of the issue, which is implicated in this case. The state must prove the existence of *mens rea* because the statute with which Rohan is charged creates a gross-misdemeanor offense, which is punishable by as much as one year of incarceration. *See* Minn.Stat. §§ 340A.702(8) (2010); 609.02, subds. 2–4 (2010). This fact is pertinent because the supreme court has stated that the penalty associated with an offense "[h]istorically" has been a "significant consideration" and an "important factor" in determining whether *mens rea* is an element of the offense. *Ndikum,* 815 N.W.2d at 822 (quotations omitted). The applicable penalty is significant because public-welfare offenses historically have given rise to only " 'small penalties' like fines and short jail

sentences." *Id.* (quoting *Staples*, 511 U.S. at 616, 114 S.Ct. at 1803). The importance of the applicable penalty is corroborated by the caselaw. The supreme court has held that gross-misdemeanor and felony offenses require proof of *mens rea*. *See Ndikum*, 815 N.W.2d at 818–22 (gross-misdemeanor possession of firearm in public without permit); *C.R.M.*, 611 N.W.2d at 805–10 (felony possession of dangerous weapon on school grounds). On the other hand, the supreme court has held that misdemeanor offenses may be proved without evidence of *mens rea*. *See State v. Loge*, 608 N.W.2d 152, 154–59 (Minn.2000) (open bottle). More specifically, the supreme court has stated that the penalties applicable to gross-misdemeanor offenses are "severe punishments incompatible with a public welfare offense." *Ndikum*, 815 N.W.2d at 822; *see also State v. Siirila*, 292 Minn. 1, 10, 193 N.W.2d 467, 473 (1971) (holding that gross-misdemeanor offense of possession of small amount of marijuana requires proof of *mens rea*). It is notable that the supreme court never has applied the public-welfare doctrine and held that a gross-misdemeanor offense may be proved without regard for *mens rea*.

I would interpret the above-cited caselaw to provide that if a criminal statute does not expressly require proof of *mens rea*, the statute may be interpreted literally only if, first, the statute creates an offense of the nature and quality of a public-welfare offense and, second, the statute prescribes the mild penalties that historically have been associated with public-welfare offenses. In this case, the offense with which Rohan is charged has the nature and quality of a public-welfare offense. *See Morissette*, 342 U.S. at 255–56, 72 S.Ct. at 246. But the charged offense is a gross misdemeanor. *See* Minn.Stat. § 340A.702(8). Rohan is subject to penalties of as much as one year of incarcera-

tion and a $3,000 fine. *See* Minn.Stat. § 609.02, subds. 2–4. These are not the "small penalties" that historically have been associated with public-welfare offenses. *See Ndikum*, 815 N.W.2d at 822 (quotation omitted). Thus, I would conclude that the state is required to prove that Rohan had the requisite form of *mens rea* at the time of her offense.

The majority opinion reaches a contrary conclusion based on two supreme court opinions interpreting earlier statutes governing unlawful service of alcoholic beverages. Those two opinions make this court's interpretive task somewhat difficult, but they do not overcome the analysis and reasoning reflected in the supreme court's 2012 opinion in *Ndikum*.

In *State v. Heck*, 23 Minn. 549 (1877), the supreme court held that the offense of serving alcoholic beverages to a habitual drunkard did not require proof that the defendant knew that the customer was a habitual drunkard. *Id.* at 550. The opinion is unhelpful for present purposes because the opinion does not discuss or apply the concepts that were articulated by the United States Supreme Court in *Morissette* and *Staples* and applied by our supreme court in *Loge, C.R.M.*, and *Ndikum*. Furthermore, the statute at issue in *Heck* created only a misdemeanor offense, which was punishable by no more than 90 days of jail. *Id.* at 549 (citing Minn.Gen.Stat. ch. 16, § 11 (1866), *amended by* 1872 Minn. Laws ch. 61, § 3, at 127–28, *and* 1875 Minn. Laws ch. 112, § 2, at 144); 1872 Minn. Laws ch. 61, § 3, at 128. That penalty was limited in the same way that misdemeanor penalties presently are limited. *See* Minn.Stat. § 609.02, subd. 3 (2012) (providing that misdemeanor may be punished by incarceration of no more than 90 days and fine of no more than $1,000). Serving alcohol to an under-age person did not become a gross misdemean-

or until 34 years after the *Heck* opinion was issued. *See* 1911 Minn. Laws ch. 290, § 1, at 407 (codified at Minn.Gen.Stat. § 3179 (1913)). Thus, the supreme court did not decide in *Heck* that the gross-misdemeanor offense with which Rohan is charged does not require proof of *mens rea.*

In *State v. Neisen,* 415 N.W.2d 326 (Minn.1987), the supreme court considered the question "whether the legislature intended ... to deprive an accused of the affirmative defense that he or she had determined the purchaser's age by examining the purchaser's driver's license or identification card." *Id.* at 327. The *Neisen* court also did not discuss or apply the caselaw concerning public-welfare offenses, even though the relevant concepts previously had been recognized. *See, e.g., Morissette,* 342 U.S. at 255–56, 72 S.Ct. at 246; *State v. Strong,* 294 N.W.2d 319, 320 (Minn.1980); *Morse,* 281 Minn. at 383–84, 161 N.W.2d at 702–03. Although the *Neisen* court stated in passing what the state must prove, its statement should be understood as merely a reflection of the language of the statute. Its statement should not be understood to be the result of a reasoned application of the public-welfare caselaw, which seeks to determine whether a statute should be interpreted to require proof of *mens rea* despite the absence of such a requirement in the language of the statute. The appellant apparently made no such argument, so the absence of a *mens rea* requirement was assumed to re-

flect the governing law. Nonetheless, the *Neisen* court did acknowledge "the public policy that if criminal liability, particularly *gross misdemeanor* or felony liability, is to be imposed for conduct unaccompanied by fault, the legislative intent to do so should be clear." *Neisen,* 415 N.W.2d at 329 (emphasis added) (citing Wayne R. La-Fave & Austin W. Scott, *Criminal Law* 219–21 (1972)). This portion of the *Neisen* opinion actually supports the principle that gross misdemeanors should be treated in the same manner as felonies when determining whether the state must prove *mens rea.* The *Neisen* court elected to implement that principle by recognizing an affirmative defense, which is consistent with the way the parties framed the issue at trial and in the court of appeals. *Id.* at 327.

Thus, the supreme court has not squarely held that the gross-misdemeanor offense with which Rohan is charged is a public-welfare offense such that the state is relieved of its usual obligation to prove *mens rea.* Regardless of the precedential value that *Heck* and *Neisen* might have had when they were decided, they no longer can be read in the same way in light of the reasoning of the supreme court's more recent cases. I have no reason to believe that the supreme court does not remain committed to its most recent statement that the penalties for a gross-misdemeanor offense are "incompatible with a public welfare offense." *See Ndikum,* 815 N.W.2d at 822.[1] Furthermore, we cannot

1. I am mindful of the possibility that *Ndikum,* despite its fulsome analysis, contains only a partial explication of Minnesota law concerning public-welfare offenses. One leading commentator has identified seven factors that have been applied by American courts in determining whether criminal liability may be imposed without proof of *mens rea.* Wayne R. LaFave, *Criminal Law* § 5.5(a), at 290–93 (5th ed.2010). Among them is the "severity

of the punishment provided for the crime." *Id.* at 290–91. It does not appear that the supreme court has adopted any significant number of the other factors. But even if other factors are relevant under Minnesota law, there is reason to believe that severity of punishment would remain an important, nearly determinative factor. The United States Supreme Court took that approach in *Staples* for purposes of federal criminal law,

assume that the legislature has acquiesced in *Heck* and *Neisen* because the supreme court's caselaw requires "some positive indication of legislative intent" that proof of *mens rea* is not required. *Ndikum*, 815 N.W.2d at 818–19.

In sum, in light of the existing supreme court caselaw, I would conclude that the offense with which Rohan is charged is a public-welfare offense for which the state

must prove that she had the requisite *mens rea* at the time she committed the offense. Accordingly, I would affirm the district court's order.

*see* 511 U.S. at 616–19, 114 S.Ct. at 1802–04, and the Minnesota Supreme Court found that part of *Staples* to be persuasive, *see Ndikum,*

815 N.W.2d at 822; *C.R.M.,* 611 N.W.2d at 806–07.