**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A14-1236**

Robert Edward Dornbusch, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed March 2, 2015**
**Affirmed**
**Ross, Judge**

Hennepin County District Court
File No. 27-CV-12-21256

Robert Edward Dornbusch, Winona, Minnesota (pro se appellant)

Lori Swanson, Attorney General, Jacob Fischmann, Assistant Attorney General, Rory C. Mattson, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Ross, Presiding Judge; Kirk, Judge; and Reilly, Judge.

**S Y L L A B U S**

When a district court reviews the commissioner of public safety's decision under the implied-consent statute to revoke the license of a driver whose chemical-test results indicated the presence of a Schedule II controlled substance, the district court may not rescind the revocation on the ground that the drug's presence resulted from the driver's lawful use of the drug under a physician's prescription.

## OPINION

**ROSS**, Judge

A sample of Robert Dornbusch's blood tested positive for amphetamine after police stopped him in Deephaven in July 2012 and field sobriety testing indicated that he was impaired. The public safety commissioner revoked Dornbusch's driver's license for 90 days. Dornbusch contested the revocation in district court, arguing that the revocation cannot stand because the positive test resulted from his lawful use of a prescription drug. The district court made no fact findings on the assertion. It instead rejected the argument on the legal ground that the prescription-drug affirmative criminal defense does not apply in administrative license-revocation proceedings under the implied-consent statute.

Dornbusch appeals. Because the district court was correct, we affirm.

## ISSUE

After the commissioner of public safety revokes the license of a driver whose chemical-test results indicated the presence of a Schedule II controlled substance, may a district court on judicial review rescind the revocation on the ground that the positive indication resulted from the driver's lawful use of the substance under a physician's prescription?

## ANALYSIS

The commissioner of public safety must revoke a driver's license under the administrative provisions of the impaired-driving law if certain conditions exist, such as the presence of a Schedule II controlled substance in a driver suspected of driving while impaired:

> Upon certification by the peace officer that there existed probable cause to believe the person had been driving . . . a motor vehicle in violation of section 169A.20 (driving while impaired) and that the person submitted to a test and the test results indicate . . . the presence of a controlled substance listed in Schedule I or II or its metabolite, . . . then the commissioner shall revoke the person's license.

Minn. Stat. § 169A.52, subd. 4(a) (2014). The amphetamine detected in Dornbusch's blood after his arrest for suspected impaired driving is a Schedule II controlled substance. Minn. Stat. § 152.02, subd. 3(d)(1) (2014). Dornbusch's license revocation was therefore mandatory.

Dornbusch challenges the district court's holding that the affirmative prescription-drug defense does not apply to the district court's review of the revocation. The defense certainly could apply in a driving-while-impaired *criminal* proceeding in which liability is based solely on the presence of a controlled substance in the driver's body:

> If proven by a preponderance of the evidence, it is an affirmative defense to a violation of section 169A.20 subdivision 1, clause (7) (presence of Schedule I or II controlled substance), that the defendant used the controlled substance according to the terms of a prescription issued for the defendant in accordance with sections 152.11 and 152.12.

Minn. Stat. § 169A.46, subd. 2 (2014). The question we must answer—whether the defense could also apply in a driving-while-impaired *administrative* proceeding—is a matter of statutory interpretation, which we review de novo. *See State v. Rohan*, 834 N.W.2d 223, 226 (Minn. App. 2013), *review denied* (Minn. Oct. 15, 2013).

Although the statutory prescription-drug defense expressly applies in cases involving "a violation of section 169A.20, subdivision 1, clause (7)," the impaired-

3

driving chapter says nothing to suggest that it applies outside that criminal context. And the provision that governs judicial review of license revocations specifically identifies the "limited" issues to be resolved in a judicial-review proceeding: "The scope of the hearing is limited to the issues in clauses (1) to (10)." Minn. Stat. § 169A.53, subd. 3(b) (2014). The issues in four of those clauses refer to test refusal, commercial vehicles, or motor vehicle accidents, and these involve circumstances plainly irrelevant to Dornbusch's revocation. *See* Minn. Stat. § 169A.53, subd. 3(b)(3), (4), (7), (9). The remaining six issues are these:

> (1) Did the peace officer have probable cause to believe the person was driving, operating, or in physical control of a motor vehicle . . . in violation of section 169A.20 (driving while impaired)?

> (2) Was the person lawfully placed under arrest for violation of section 169A.20?

> . . . .

> (5) If the screening test was administered, did the test indicate an alcohol concentration of 0.08 or more?

> (6) At the time of the request for the test, did the peace officer inform the person of the person's rights and the consequences of taking or refusing the test as required by section 169A.51, subdivision 2?

> . . . .

> (8) If a test was taken by a person driving, operating, or in physical control of a motor vehicle, did the test results indicate at the time of testing: (i) an alcohol concentration of 0.08 or more; or (ii) the presence of a controlled substance listed in Schedule I or II or its metabolite, other than marijuana or tetrahydrocannabinols?

. . . .

> (10) Was the testing method used valid and reliable and were the test results accurately evaluated?

*Id.* The prescription-drug defense does not appear in this list of "limited" issues. And the supreme court has recently emphasized that the list is exclusive. *See Axelberg v. Comm'r of Pub. Safety*, 848 N.W.2d 206, 208–09 (Minn. 2014) (prohibiting driver from raising necessity defense in revocation proceeding because the defense is not in the statute's issues list). We therefore hold that a district court reviewing the commissioner of public safety's decision to revoke the license of a driver whose chemical test results indicated the presence of a Schedule II controlled substance may not rescind the revocation on the ground that the positive indication resulted from the driver's prescribed, lawful use of the substance.

We understand the rationale behind the prescription-drug defense in criminal proceedings. That the impaired-driving statute expressly imposes no criminal liability on a person who is not under the influence of prescribed medicine but who drives after ingesting the medicine follows naturally from the fact that many Schedule II controlled substances have accepted medical uses. *See* Minn. Stat. § 152.02, subd. 7(2) (2014) (setting out "currently accepted medical use" as a criterion for classification in Schedule II). For example, Schedule II includes the stimulants amphetamine (Dexedrine, Adderall), methamphetamine (Desoxyn), and methylphenidate (Ritalin, Concerta), and it also includes the narcotics hydromorphone (Dilaudid), methadone (Dolophine), oxycodone (OxyContin, Percocet), fentanyl (Sublimaze, Duragesic), morphine, codeine, and

hydrocodone. *Id.*, subd. 3(b)(1)(ii)(B), (F), (G), (I), (J), (c)(10), (16), (d)(1), (2), (4); *see* U.S. Dep't of Justice, D.E.A., *Lists of Scheduling Actions, Controlled Substances, Regulated Chemicals* (Feb. 2015), *available at* www.deadiversion.usdoj.gov/schedules (identifying commercial names of controlled substances). The statute indicates that these drugs are listed in Schedule II primarily to address potential abuse and dependence, Minn. Stat. § 152.02, subd. 7(2), not to thwart their intended prescribed use by drivers.

And we recognize that nothing in the implied-consent law suggests that the legislature intended that a driver, despite not necessarily being *criminally* liable for driving while properly using a prescribed drug, would nevertheless be *administratively* liable and lose his license with no judicial remedy to void the revocation. We therefore do not suppose that the legislature contemplated this result when it limited the scope of judicial review proceedings to the ten listed issues in section 169A.53, subdivision 3(b). But our holding is required by the admonition not to add words when construing a statute, even words that the legislature has apparently inadvertently omitted. *Martinco v. Hastings*, 265 Minn. 490, 497, 122 N.W.2d 631, 638 (1963) ("[C]ourts cannot supply that which the legislature purposely omits or inadvertently overlooks."). For these reasons, we follow the statute's plain language and the *Axelberg* court's holding, and we affirm the district court's decision.

We add that we are aware of, but have no basis to apply, a very narrow exception to the plain-language rule. In an exceptional situation, applying a statute's plain words might obviously and directly controvert, rather than follow, the legislature's clear and manifest purpose. *See, e.g.*, *State v. Retzlaff*, 807 N.W.2d 437, 440 (Minn. App. 2011)

6

("[W]e are convinced that this is one of those rare circumstances in which we cannot both follow a statute's plain language and avoid an absurd result that contradicts the statute's obvious intent."), *aff'd mem.*, 842 N.W.2d 565 (Minn. 2012); *see also Mut. Serv. Cas. Ins. Co. v. League of Minn. Cities Ins. Trust*, 659 N.W.2d 755, 761–62 (Minn. 2003) (summarizing decisions and clarifying that "the court could disregard the plain language of a statute only where the legislative purpose was clear and the plain meaning would utterly confound that purpose"). The rare exception does not apply here because, although the legislature has expressly prevented criminal impaired-driving liability arising from the mere presence of a prescription drug in a driver's body due to lawful use, it has not expressly established its intent to extend this protection to prevent license revocation. It is not our prerogative to reconcile the gap between the criminal provisions and the administrative provisions in the impaired-driving law. "This public policy concern should be directed to the [l]egislature because we must read this state's laws as they are, not as some argue they should be." *Axelberg*, 848 N.W.2d at 212.

## D E C I S I O N

Because Dornbusch's use of prescription drugs is not one of the limited issues that the district court may resolve in its judicial review of the commissioner's license-revocation decision, the district court here correctly rejected Dornbusch's attempt to invoke the criminal prescription-drug defense.

**Affirmed.**