# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A15-2017

State of Minnesota,
Respondent,

vs.

Mark Robert Moser,
Appellant.

**Filed August 8, 2016**
**Reversed**
**Jesson, Judge**

Hennepin County District Court
File No. 27-CR-14-37764

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda M. Freyer, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Jeffrey C. Dean, Minneapolis, Minnesota (for appellant)

Considered and decided by Hooten, Presiding Judge; Halbrooks, Judge; and Jesson, Judge.

## S Y L L A B U S

1.    By eliminating a mistake-of-age defense and imposing strict liability, Minnesota Statutes section 609.352, subdivisions 2 & 3(a) (2014), as applied to solicitation that occurs over the Internet, involves no face-to-face contact between the solicitor and the child, and where the child represents to the solicitor that he or she is 16 or older, violates substantive due process.

2.     Defendants charged with violating Minnesota Statutes section 609.352, subdivision 2, solely over the Internet and without any face-to-face contact, must be given an opportunity to raise a mistake-of-age affirmative defense if the child represents to the defendant that he or she is 16 or older.

## O P I N I O N

**JESSON**, Judge

Appellant Mark Moser challenges his felony conviction for soliciting a child in violation of Minnesota Statutes section 609.352, subdivision 2 (the child-solicitation statute). Moser argues that the child-solicitation statute violates due process as applied to his conduct. Moser solicited a child for sex over the Internet. Moser never met the child in person and the child told him that she was 16. Because we conclude that the statute, when applied to Moser, violates substantive due process by imposing strict liability for a felony offense, we reverse. Moser also argues that the statute implicates the First Amendment, and he challenges the constitutionality of Minnesota Statutes section 609.352, subdivision 2a (2014). Because Moser did not raise these issues before the district court and was not convicted of violating Minn. Stat. § 609.352, subdivision 2a, we do not address these claims.

## FACTS

On September 17, 2014, police received a report that an adult male had used Facebook.com in an attempt to solicit a 14-year-old girl for sex. Police met with the child, and she identified 42-year-old Moser as the adult male.

The Facebook exchange between Moser and the child took place between September 15 and September 21, 2014. Moser and the child never met in person. Early on in their exchange, the child told Moser that she was 16, although she was actually 14. Moser asked the child to send him pictures of herself. The child agreed but said that it would have to wait until later. Moser repeatedly asked the child to send the pictures. He and the child also discussed masturbation, and Moser made references to meeting up to have sexual contact. At one point, Moser said, "What are you doing tonight?" He then said, "When can I meet you and f--k that awesome pussy of yours?"

Based on this Facebook interaction, Moser was charged with solicitation of a child to engage in sexual conduct in violation of Minnesota Statutes section 609.352, subdivision 2. Moser filed a "motion to declare [the] statute unconstitutional and to allow [the] affirmative defense of mistake as to age." Moser argued that, in cases where the only interaction between the adult and the child is over the Internet, a defendant must be allowed to raise a mistake-of-age defense. He claimed that by precluding the defense and failing to require the state to prove that he had knowledge of the child's age, the statute imposed strict liability and violated substantive due process and his fundamental rights to a fair trial and to present a full defense.

The district court denied Moser's motion, determining that the imposition of strict liability did not violate Moser's due-process rights. Although the district court agreed with Moser that the elimination of the mistake-of-age defense implicated Moser's fundamental rights, the district court determined that the statute was constitutional because it was narrowly tailored to serve a compelling government interest.

3

After his motion was denied, Moser stipulated to the prosecution's case to obtain review of the district court's pretrial ruling under Minnesota Rule of Criminal Procedure 26.01, subdivision 4. Moser waived his right to a jury trial and agreed to have the district court determine his guilt based on the prosecution's evidence. Moser and the prosecutor also signed a written document acknowledging that the district court's pretrial orders "in which the court denied [Moser's] Motion to Permit the Affirmative Defense of Reasonable Mistake of Age [are] dispositive or that a trial will be unnecessary if [Moser] prevails on appeal." Based on the complaint and police reports presented by the state, the district court found Moser guilty of violating Minnesota Statutes section 609.352, subdivision 2.

The district court stayed imposition of sentence for three years and placed Moser on probation. This appeal follows.

## ISSUE

Does substantive due process require that a defendant charged under the child-solicitation statute be given the opportunity to raise a mistake-of-age defense, when the solicitation occurred over the Internet, without face-to-face contact, and the child represented to the defendant that he or she was 16 or older?

## ANALYSIS

The child-solicitation statute makes it a felony punishable by up to three years in prison for "[a] person 18 years of age or older" to solicit "a child or someone the person reasonably believes is a child to engage in sexual conduct with intent to engage in sexual conduct." Minn. Stat. § 609.352, subds. 2, 4 (2014). Solicitation may occur "in person, by telephone, by letter, *or by computerized or other electronic means*." *Id.*, subd. 1(c)

4

(2014) (emphasis added). The statute defines a "child" as "a person 15 years of age or younger." *Id.*, subd. 1(a) (2014). The statute clearly states that "[m]istake as to age is not a defense to a prosecution under this section." *Id.*, subd. 3(a) (2014).

Typically, criminal offenses require both a volitional act and a criminal intent, referred to as mens rea. Wayne R. LaFave, *Criminal Law* § 5.1, at 253 (5th ed. 2010). A statute imposes strict liability when it dispenses with mens rea by failing to "require the defendant to know the facts that make his conduct illegal." *State v. Ndikum*, 815 N.W.2d 816, 818 (Minn. 2012) (quoting *Staples v. United States*, 511 U.S. 600, 605, 114 S. Ct. 1793, 1797 (1994)). The state argues that the child-solicitation statute does not impose strict liability because it requires an "*intent* to engage in sexual conduct." Minn. Stat. § 609.352, subd. 2 (emphasis added). But it is the intent to engage in sexual conduct *with a child* that makes the conduct illegal, not the intent to engage in sexual conduct generally. *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 73, 115 S. Ct. 464, 469 (1994) (stating in child pornography case that "the age of the performers is the crucial element separating legal innocence from wrongful conduct"). The child-solicitation statute imposes strict liability because it does not require the state to prove that the defendant had knowledge of the child's age (the fact that makes the conduct illegal), and it prohibits the defendant from raising mistake of age as a defense.

Strict-liability crimes are generally disfavored, but states may enact them within the boundaries of the Constitution. *United States v. United States Gypsum Co.*, 438 U.S. 422, 437-38, 98 S. Ct. 2864, 2873-74 (1978). The question before us is whether Moser's constitutional right to due process requires that he be permitted to raise a mistake-of-age

5

defense.[1] The constitutionality of a statute presents a question of law, which we review de novo. *State v. Melde*, 725 N.W.2d 99, 102 (Minn. 2006). In doing so we presume that Minnesota statutes are constitutional and will strike down a statute only if the challenging party proves that it is invalid. *Skeen v. State*, 505 N.W.2d 299, 312 (Minn. 1993).

To determine whether Moser's due-process rights were violated, we first address the long history of criminal jurisprudence discussing mens rea requirements. We then consider the exceptions allowing for limited strict-liability crimes that have been carved out over time. Finally, we consider whether, given the requirements of due process, Moser was entitled to raise a mistake-of-age defense.

We embark on this analysis acknowledging that neither the United States nor the Minnesota Supreme Court "has undertaken to delineate a precise line or set forth comprehensive criteria for distinguishing between crimes that require a mental element and crimes that do not." *Staples*, 511 U.S. at 619-20, 114 S. Ct. at 1804 (quotation omitted). We also do not attempt this task. Rather we address the narrow issue of whether due process requires a defendant charged under the child-solicitation statute to have the opportunity to raise a mistake-of-age defense, when the solicitation occurred over the Internet, without face-to-face contact, and when the defendant was specifically told that the child was 16.

---

[1] Moser also raises First Amendment arguments. Moser did not raise these issues before the district court, and we do not consider them on appeal. *See Roby v. State*, 547 N.W.2d 354, 357 (1996). We also note that, pursuant to Minnesota Rule of Criminal Procedure 26.01, subdivision 4(f), Moser acknowledged appellate review would only be of the issue specifically addressed by the district court. Accordingly, our review is limited to the due-process claim that was actually decided by the district court.

## I.  Criminal liability has historically required mens rea.

The concept that wrongdoing must be conscious in order to be criminal is fundamental to our justice system.  As Justice Jackson wrote in *Morissette v. United States*:

> The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion.  It is as universal and persistent in mature systems of law as belief in freedom on the human will and a consequent ability and duty of the normal individual to choose between good and evil. . . . Unqualified acceptance of this doctrine by English common law in the Eighteenth Century was indicated by Blackstone's sweeping statement that to constitute any crime there must first be a "vicious will."

342 U.S. 246, 250-51, 72 S. Ct. 240, 244 (1952).  In a more recent decision, the United States Supreme Court reinforced this rule that the imposition of criminal liability generally requires proof of mens rea.  *Staples*, 511 U.S. at 605, 618, 114 S. Ct. at 1797, 1804.  *Staples* interpreted a federal statute criminalizing possession of an unregistered machine gun that required the state to prove that the defendant knew the weapon he possessed had the characteristics that made it a machine gun.  *Id.* at 602, 114 S. Ct. at 1795.  The Court's holding was based on a "presumption that a defendant must know the facts that make his conduct illegal."  *Id.* at 619, 114 S. Ct. at 1804.

The Minnesota Supreme Court, when it held that the state was required to prove, as an element of possession of a pistol without a permit, that a defendant knew he possessed the pistol, stated that "[t]he mens rea requirement is firmly embedded in the common law."  *Ndikum*, 815 N.W.2d at 818 (quotation omitted).  Similarly, in *In re Welfare of C.R.M.*, the supreme court interpreted a statute criminalizing possession of a knife on school property to require the state to prove that the defendant knew that he possessed the knife on school

7

property. 611 N.W.2d 802, 810 (Minn. 2000). In doing so, the court noted that "[t]he rulings of the United States Supreme Court and this court . . . highlight the long established principle of American criminal jurisprudence that in common law crimes and in felony level offenses mens rea is required." *Id.* at 808.

Most United States Supreme Court and Minnesota Supreme Court cases addressing strict-liability statutes involve the interpretation of legislation that is silent on the issue of criminal intent. *See, e.g.*, *Elonis v. United States*, 135 S. Ct. 2001, 2008, 2012 (2015) (holding that, when statute prohibiting communication of threat in interstate commerce was silent on the issue, government was required to prove that defendant intended to issue threats or knew that communications would be viewed as threat in order to obtain conviction); *Staples*, 511 U.S. at 605, 114 S. Ct. at 1796-97 ("[W]e have long recognized that determining the mental state required for commission of a federal crime requires construction of the statute and . . . inference of the intent of Congress.") (quotation omitted); *Ndikum*, 815 N.W.2d at 820-22 (discussing whether to impute criminal intent into statute that was silent on the issue); *C.R.M.*, 611 N.W.2d at 809 (reading criminal intent requirement into felony statute because legislative intent to eliminate it was not clear).[2] Because strict liability is disfavored, and the "rule of lenity" requires that penal

---

[2] In another case, *State v. Garcia-Gutierrez*, the Minnesota Supreme Court declined to interpret a statute prohibiting first-degree burglary with a dangerous weapon to require the state to prove that the defendant knew he possessed a dangerous weapon. 844 N.W.2d 519 (Minn. 2014). The court reasoned that the statute did not impose strict liability because it required the state to prove mens rea for the underlying crime of burglary. *Id.* at 523-25. The additional element of possession of a dangerous weapon was not what made the defendant's conduct illegal; it merely increased the penalty. *Id.* at 526.

statutes be construed in favor of criminal defendants, courts generally must interpret statutes that are silent as to criminal intent to contain a mens rea requirement. *C.R.M.*, 611 N.W.2d at 805. Minnesota's child-solicitation statute, however, explicitly eliminates the mistake-of-age defense. Minn. Stat. § 609.352, subd 3(a); *see also* Minn. Stat. § 609.02, subd. 9(6) (2014) ("Criminal intent does not require proof of the age of a minor even though age is a material element in the crime in question."). As a result, these cases construing statutes that are silent on the issue of intent are instructive, but do not dictate the result in this matter.

Criminal intent is embedded in our justice system. It is a rare case where the legislature explicitly excludes a mens rea requirement for a felony offense so that the analysis is one of constitutional viability, rather than statutory construction. *See* LaFave, § 5.5(a), at 290 ("It is rare if ever that the legislature states affirmatively in a statute that described conduct is a crime though done without fault."). But that is the case before us.

II. **Exceptions to the mens rea requirement permit limited strict-liability crimes.**

There are certain areas, however, where strict liability is accepted: public welfare offenses and crimes where the circumstances make it reasonable to charge the defendant with knowledge of the facts that make the conduct illegal.

As Congress and state legislatures moved during the Industrial Revolution to use criminal penalties not just to punish behavior, but as a means of regulation, the category of "public welfare offenses" emerged. *Morissette*, 342 U.S. at 253-55, 72 S. Ct. at 245-46. Unlike prior common-law offenses, these public welfare offenses do not involve

9

aggression or action, but are based on "neglect where the law requires care, or inaction where it imposes a duty." *Id.* at 255, 72 S. Ct. at 246. This court has held, for example, that the misdemeanor offense of failing to produce proof of insurance on an automobile is a public welfare offense. *State v. Mayard*, 573 N.W.2d 707, 710 (Minn. App. 1998), *review denied* (Minn. Mar. 19, 1998). Similarly, the Minnesota Supreme Court has indicated that possession of an open alcohol bottle in a vehicle is a public welfare offense. *State v. Loge*, 608 N.W.2d 152, 157 (Minn. 2000). Other examples of public welfare offenses include the sale of contaminated or adulterated foods or drugs and the possession of certain illegal weapons. *See, e.g.*, *United States v. Park*, 421 U.S. 658, 95 S. Ct. 1903 (1975) (sale of contaminated foods); *United States v. Freed*, 401 U.S. 601, 91 S. Ct. 1112 (1971) (possession of unregistered hand grenades); *United States v. Dotterweich*, 320 U.S. 277, 64 S. Ct. 134 (1943) (sale of mislabeled drugs).

As the Minnesota Supreme Court has noted when reviewing public welfare offenses, the lack of a mens rea requirement is justified because these offenses regulate potentially harmful items, such as dangerous devices, products, or waste materials. *Ndikum*, 815 N.W.2d at 819-20. The items regulated by public welfare statutes are so inherently dangerous that the defendant is on notice of the possibility of strict regulation. *Id.* at 820.

In defining the "public welfare offense," it is also helpful to look at cases concluding that a certain statute does *not* create such an offense. In *Morissette*, the United States Supreme Court dealt with a defendant who had taken spent bomb casings from a government practice-bombing range and, as a result, was convicted of converting

10

government property. 342 U.S. at 247-50, 72 S. Ct. at 241-43. The defendant testified that he believed the casings had been abandoned and that he had no intent to steal them. *Id.* at 249, 72 S. Ct. at 242. The district court, however, instructed the jury that, under the relevant statute, this innocent intent was not a defense. *Id.* at 249, 72 S. Ct. at 242-43. The Supreme Court reversed Morissette's conviction and concluded that Congress did not mean to eliminate the common-law requirement of criminal intent. *Id.* at 263-73, 72 S. Ct. at 250-55. In so doing, the Court declined to interpret the crime of conversion, with its common-law roots, as a public welfare offense. *Id.*

Similarly, in *Staples*, the Supreme Court held that possession of an unregistered machine gun was not a public welfare offense. 511 U.S. at 602, 114 S. Ct. at 1795. The court reasoned that, because gun ownership is so widespread, the mere possession of a firearm does not put an owner on notice that he or she is engaging in an inherently dangerous activity. *Id.* at 610-11, 114 S. Ct. at 1799-1800. Likewise, in *C.R.M.*, the Minnesota Supreme Court refused to interpret the crime of carrying a knife on school grounds to be a public welfare offense. 611 N.W.2d at 810. Instead of applying the statute as written, without any mens rea requirement, the court read an element into the statute requiring the defendant to have "knowledge of possession of the knife while on school property." *Id.* In doing so, the court noted that "knives as common household utensils are clearly not inherently dangerous, as they can be used for a myriad of completely benign purposes." *Id.* The court also stated the importance of not "interpreting statutes as eliminating mens rea where doing so criminalizes a broad range of what would otherwise be innocent conduct." *Id.* at 809.

11

Besides placing defendants on notice of the possibility of strict regulation, public welfare offenses also typically carry only minimal criminal penalties and do not subject a defendant's reputation to serious damage. *Morissette*, 342 U.S. at 255-56, 72 S. Ct. at 246. Courts have therefore been far less likely to approve the imposition of strict liability for offenses that impose felony-level penalties. *See, e.g.*, *Ndikum*, 815 N.W.2d at 822 ("We have also considered the severity of the penalty for a crime to be an important factor in determining whether the Legislature intended to dispense with mens rea as an element of that crime."); *C.R.M.*, 611 N.W.2d at 810 (discussing the omission of a mens rea requirement and noting a "heightened concern when it relates to felony level crimes").

In addition to public welfare offenses, select crimes have also been excluded from the normal mens rea requirement where the circumstances make it reasonable to charge the defendant with knowledge of the facts that make the conduct illegal. Laws prohibiting sexual conduct with children below the age of consent are a long-standing example. *Morissette*, 342 U.S. at 251 n.8, 72 S. Ct. at 244 n.8. The victim's actual age is determinative, regardless of whether the defendant reasonably believed the victim to have reached the age of consent. *Id.*; *State v. Morse*, 281 Minn. 378, 384, 161 N.W.2d 699, 703 (1968). Similarly, in production-of-child-pornography cases, where the defendant confronts the under-age victim personally, strict liability may be imposed. *X-Citement Video, Inc.*, 513 U.S. at 72 n.2, 115 S. Ct. at 469 n.2; *State v. Peterson*, 535 N.W.2d 689 (Minn. App. 1995), *review denied* (Minn. Oct. 10, 1995). A defendant can reasonably be required to ascertain the age of a person the defendant meets in person.

12

While the legislature may impose strict liability, its ability to do so is not without limits. Strict liability has only been accepted in two narrow areas: public welfare offenses and crimes where it is reasonable to place the burden on the defendant to discover the facts that make the conduct criminal. Public welfare offenses generally involve items or conduct that by their very nature inform the defendant that his conduct may be subject to strict regulation. These offenses also usually carry only small penalties. The other category of offenses involves cases like the sexual assault of underage children and production of child pornography, where the defendant comes face to face with the victim and is therefore presumed to be able to ascertain the victim's age.

**III.** **The child-solicitation statute violates substantive due process as applied to solicitation that occurs solely over the Internet, without any face-to-face contact, and where the person solicited represents to the defendant that he or she is 16 or older.**

The Due Process Clauses of the United States and Minnesota Constitutions provide guarantees of fair procedures, prohibiting the deprivation of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1; Minn. Const. art. I, § 7.[3] In addition, substantive due process protects individuals from "certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *In re Linehan*, 594 N.W.2d 867, 872 (Minn. 1999) (quotations omitted). When a statute is challenged under substantive due process, we begin our analysis by determining whether a fundamental right is infringed. *SooHoo v. Johnson*, 731 N.W.2d 815, 821 (Minn. 2007).

---

[3] The Due Process Clause of the Minnesota Constitution provides no more protection than the Due Process Clause of the United States Constitution. *Kahn v. Griffin*, 701 N.W.2d 815, 826 (Minn. 2005).

13

If so, the burden shifts to the state to demonstrate that the statute advances a compelling state interest. *Linehan*, 594 N.W.2d at 872. If a compelling interest exists, we examine whether the statute is narrowly tailored to serve that interest. *Id.* We address each step in this analysis in turn.

Fundamental rights are those "deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720-21, 117 S. Ct. 2258, 2268 (1997) (quotations and citations omitted). When we look for "guideposts for responsible decisionmaking" regarding substantive due process, we consider "our Nation's history, legal traditions, and practices." *Id.* at 721, 117 S. Ct. at 2268 (quotation omitted). While courts have expressed reluctance to expand the doctrine of substantive due process, it is not an expansion to determine that a person's right to be free from bodily restraint is fundamental. *In re Blodgett*, 510 N.W.2d 910, 921 (Minn. 1994); *see, e.g.*, *State v. Guminga*, 395 N.W.2d 344, 345-46 (Minn. 1986) (conducting a substantive-due-process analysis of a statute involving intrusion on personal liberty); *State v. Tibbetts*, 281 N.W.2d 499, 501 (Minn. 1979) (discussing the high stakes of loss of liberty upon criminal conviction). Moreover, the rights to a fair trial and to present a complete defense also have long been at the core of due-process protections. *See State v. Beecroft*, 813 N.W.2d 814, 838-39 (Minn. 2012) (stating that the "right of a defendant to present a complete defense is an essential principle of our criminal justice system and is guaranteed by the Due Process Clause of both the United States Constitution and the Minnesota Constitution"); *State v. Dorsey*, 701 N.W.2d 238, 252 (Minn. 2005) (stating that "[i]n Minnesota, we have long

14

recognized that a criminal defendant has a fundamental right to a fair trial before an impartial judge").

Because Moser's fundamental rights are infringed by the child-solicitation statute's prohibition on presenting a mistake-of-age defense and its criminal penalties, we next consider whether this law serves a compelling state interest. We conclude that it does.

The purpose of the statute is to "prohibit any persuasive conduct by adults that might entice children to engage in sexual activity." *State v. Coonrod*, 652 N.W.2d 715, 723 (Minn. App. 2002) (quotation omitted). The legislature determined that there was a need to criminalize child solicitation because it often leads to abuse, kidnapping, and prostitution, which are commonly connected to sexual conduct. *State v. Koenig*, 666 N.W.2d 366, 375 (Minn. 2003).[4] The legislature wanted to protect vulnerable children, particularly runaways and truants, from these situations. *Id.*

When the child-solicitation statute was originally enacted in 1986, its focus was on in-person solicitation. 1986 Minn. Laws ch. 445, § 3, at 779. As times changed, the statute was amended to expand the meaning of "solicits" to include solicitation "by telephone, by letter, or by computerized or other electronic means." 2000 Minn. Laws ch. 311, art. 4,

---

[4] The legislature decided to eliminate the mistake-of-age defense after hearing testimony from a county attorney. *Koenig*, 666 N.W.2d at 375. The county attorney argued that even if a victim lies about his or her age, the adult should not be allowed to hide behind a mistake-of-age defense because the safety and protection of children are at issue. *Id.* The county attorney also maintained that when a person engages in sexual activities with someone in a youthful age range, that person assumes the risk of criminal sanctions if he or she fails to take adequate measures to verify the solicited person's age. *Id.*

§ 3, at 212.[5] There can be no question, as the district court stated, that protecting the safety of children from sexual predators is a compelling government interest. *New York v. Ferber*, 458 U.S. 747, 761, 102 S. Ct. 3348, 3356 (1982). The goals behind the child-solicitation statute are as compelling today as they were in 1986, when the law first passed.

We next examine whether the law is narrowly tailored to serve this compelling interest of protecting children. The district court concluded, and the state argues, that the statute is narrowly tailored to serve the compelling state interest because it places the onus on the adult to ensure that the person solicited online is not a child.

Criminal liability generally requires proof of mens rea: that a defendant must "know the facts that make his conduct illegal." *Staples*, 511 U.S. at 605, 114 S. Ct. at 1797. To examine whether excluding mens rea in this statute is the least burdensome way to protect the public interest, we first look at Minnesota Supreme Court decisions addressing due-process limitations on strict-liability statutes. Next, we consider caselaw interpreting the two exceptions that permit strict-liability statutes in limited areas, as applied to this case, and the inchoate nature of solicitation. We conclude that the child-solicitation statute, as applied to Moser, violates the Due Process Clauses of the Minnesota and the United States

---

[5] In 2007 the statute was further amended, to add subdivision 2a, the purpose of which was to further protect children from Internet predators and to prohibit "grooming," the method sexual predators use to form a relationship with a child and begin discussing sexual topics, in an attempt to increase the child's willingness to engage in sexual contact. 2007 Minn. Laws ch. 54, art. 2, § 7, at 239; *State v. Muccio*, __ N.W.2d __, __, 2016 WL 3376041, at *3 (Minn. App. June 20, 2016). Moser also attempts to challenge subdivision 2a. But Moser was not charged with violating subdivision 2a and has no standing to challenge that portion of the statute. *See State v. Jaworsky*, 505 N.W.2d 638, 644 (Minn. App. 1993), *review denied* (Minn. Sept. 30, 1993).

16

Constitutions because, given the infringement of Moser's rights, there are less burdensome ways to protect the public interest.

Our touchstone in this analysis is *Guminga*, in which the Minnesota Supreme Court invalidated a strict-liability statute on due-process grounds. 395 N.W.2d at 344. *Guminga* dealt with a statute that imposed vicarious criminal liability on the owner of a bar whose employee sold alcohol to underage persons. *Id.* at 345-46. The owner was liable even if the employee was expressly forbidden from selling to underage persons and the owner had no knowledge of the illegal sale. *Id.* at 345-46. The supreme court concluded that the statute violated substantive due process. *Id.* at 346-49. The *Guminga* court was concerned that the violation was punishable as a gross misdemeanor; thus, conviction could result in imprisonment and could affect the defendant's criminal-history score, should he be convicted of a felony in the future. *Id.* at 346. The supreme court concluded that "no one can be convicted of a crime punishable by imprisonment for an act he did not commit, did not have knowledge of, or give express or implied consent to the commission thereof." *Id.* at 349. It quoted with approval a provision of the Model Penal Code, stating:

> Crime does and should mean condemnation and no court should have to pass that judgment unless it can declare that the defendant's act was culpable. This is too fundamental to be compromised. The law goes far enough if it permits the imposition of a monetary penalty in cases where strict liability has been imposed.

*Id.* at 347-48 (quotation omitted).

In *Guminga*, the supreme court determined that there were "less burdensome ways to protect the public interest" than criminal penalties, pointing to alternatives such as civil

17

fines. *Id.* at 345-46. While the compelling interest in *Guminga* differs from the interest of protecting children at issue here, the court's substantive due process analysis applies to this case. And while the compelling interest of protecting children from sexual exploitation is stronger than the interest of prohibiting the sale of liquor to minors in *Guminga*, the supreme court in that case held that a gross misdemeanor conviction was a violation of substantive due process and that only civil penalties would be constitutional. *Id.* at 346. Here, the penalties are substantially harsher.[6]

This approach is consistent with Minnesota decisions that have addressed when the state must prove the existence of mens rea in the statutory-construction context. These decisions emphasize the importance of mens rea in criminal cases. *E.g.*, *Ndikum*, 815 N.W.2d at 818; *C.R.M.*, 611 N.W.2d at 805. They read mens rea requirements into statutes "[b]ased on the strength of the common law rule requiring a mens rea element in every crime." *Ndikum*, 815 N.W.2d at 818. And they instruct us that "[t]he rulings of the United States Supreme Court and this court thus highlight the long established principle of

---

[6] In *State v. Shevlin-Carpenter Co.*, the Minnesota Supreme Court was asked to declare a statute unconstitutional on due-process grounds because it created both civil penalties and a strict-liability felony for harvesting timber on state land without a valid license. 99 Minn. 158, 160-61, 108 N.W. 935, 935 (1906). The supreme court upheld the statute, stating that "[i]f the language and subject-matter of the statute show clearly that [the legislature intended to impose strict liability], the courts must give it effect, however harshly the statute may seem to operate in the particular instance." *Id.* at 165, 108 N.W. at 937. The supreme court's holding was affirmed by the United States Supreme Court. *Shevlin-Carpenter Co. v. Minnesota*, 218 U.S. 57, 69-70, 30 S. Ct. 663, 666-67 (1910). *Shevlin-Carpenter Co.* is distinguishable from the child-solicitation statute at issue here. It was decided long before *Morissette*, which lays the modern framework for the requirement of mens rea. *Morissette*, 342 U.S. at 246, 72 S. Ct. at 240. It also preceded *Guminga*. 395 N.W.2d at 344.

American criminal jurisprudence that in common law crimes and in felony level offenses mens rea is required." *C.R.M.*, 611 N.W.2d at 808. A state's enactment of a statute that does not include an element of intent does not necessarily violate due process. *State v. Rohan*, 834 N.W.2d 223, 229 (Minn. App. 2013), *review denied* (Minn. Oct. 15, 2013). Our holding in *Rohan*, however, does not mean that every strict-liability statute necessarily falls within constitutional bounds. Moreover, the criminal strict-liability statute at issue in *Rohan,* which prohibited serving alcoholic beverages to a person under 21 years of age, is distinguishable from the child-solicitation statute. *Id.* at 225. Unlike this case, *Rohan* did not involve a felony offense or an offense requiring predatory-offender registration. *Id.* at 232-33 (Johnson, J., dissenting).[7]

The failure to narrowly tailor the penalties in the child-solicitation statute to the interest of protecting children is further highlighted by the fact that the statute does not fit within either of the generally accepted limited uses for strict-liability crimes: public welfare offenses or situations where there is a reasonable duty and opportunity to ascertain relevant facts.

---

[7] Other states have similarly held that mens rea is generally required by due process. *Hentzner v. State*, 613 P.2d 821, 827 (Alaska 1980). In *Hentzner*, the Alaska Supreme Court noted that "criminal intent in the sense of consciousness of wrongdoing should be regarded as a separate element of the offense, unless the public welfare exception . . . applies." *Id.* at 826. The Alaska Supreme Court has also held that "strict criminal liability may not constitutionally be imposed for serious crimes." *Id.* at 829. In addition, the Louisiana Supreme Court, in *State v. Brown*, struck down a strict-liability statute that criminalized the "unknowing" possession of a dangerous drug. 389 So. 2d 48 (La. 1980). The court concluded that it would be unreasonable to charge an individual with knowledge of the nature of a substance that may have only been in his or her possession briefly. *Id.* at 51.

While it is questionable whether the act of child solicitation could fall within the public welfare exception,[8] we are persuaded that the child-solicitation statute does not create a public welfare offense because of the harsh penalties it imposes. Public welfare offenses typically carry light penalties and do not subject a person's reputation to serious harm. *Morissette*, 342 U.S. at 256, 72 S. Ct. at 246. Violation of the child-solicitation statute, on the other hand, is a felony punishable by up to three years in prison and a $5,000 fine. Minn. Stat. § 609.352, subd. 4. In *Staples*, the Supreme Court stated that "punishing a violation as a felony is simply incompatible with the theory of the public welfare offense." *Staples*, 511 U.S. at 618, 114 S. Ct. at 1804. The Minnesota Supreme Court has also said that it "consider[s] sentences of 1 year in prison and fines of $3,000 to be severe punishments incompatible with a public welfare offense." *Ndikum*, 815 N.W.2d at 822. The penalties associated with a violation of the Minnesota child-solicitation statute are clearly not consistent with the theory of public welfare offenses.

Further, the child-solicitation statute imposes an unreasonable duty on defendants to ascertain the relevant facts. In cases where the defendant encounters the victim in person, it is reasonable to require the defendant to ascertain the victim's age. For example, it does not offend due process to charge the child pornography producer, in-person child solicitor, or child rapist, with knowledge of the victim's age. *X-Citement Video, Inc.*, 513 U.S. at 72 n.2, 115 S. Ct. at 469 n.2; *Morse*, 281 Minn. at 378, 384, 161 N.W.2d at 703.

---

[8] As stated above, public welfare offenses "typically regulate potentially harmful or injurious items." *C.R.M.*, 611 N.W.2d at 806 (quotation omitted). The child-solicitation statute is clearly intended to protect the welfare of children, but it regulates the act of solicitation, not harmful or injurious items.

Where solicitation occurs solely over the Internet, however, it is extremely difficult to determine the age of the person solicited with any certainty.[9] Moser solicited the child solely over the Internet and never met her in person.[10]

We are especially concerned with the imposition of strict liability in this statute because of the inchoate nature of the crime of solicitation. As we stated in *State v. McGrath*, solicitation is "an inchoate activity which permits application of [the child-solicitation statute] to conduct that is in some degree ambiguous." 574 N.W.2d 99, 102 (Minn. App. 1998) (quotation omitted), *review denied* (Minn. Apr. 14, 1998). Inchoate offenses are incipient acts that are criminal only because they are likely to lead to the

---

[9] The state argues that because Moser had the opportunity to question the child about her age, it is reasonable to require him to verify her age before engaging in solicitation. The state quotes our decision in *State v. Fan*, in which we stated that defendants "must simply direct their energies toward a more thorough investigation of . . . ages." 445 N.W.2d 243, 247 (Minn. App. 1989), *review denied* (Minn. Oct. 31, 1989). But *Fan* dealt with a statute that prohibited employing a minor to engage in a sexual performance, and the defendant in *Fan* met the child in person. *Id.* at 244-45. Moser had no such opportunity. Moreover, Moser did question the child about her age, and she told him that she was 16.

[10] In *State v. Wenthe*, 865 N.W.2d 293 (Minn. 2015), the Minnesota Supreme Court interpreted the clergy-criminal-sexual-conduct statute. The court determined that the statute did not require the state to prove that a clergy member had knowledge that the victim sought or received religious or spiritual advice, aid, or comfort. *Id.* at 305. Despite that fact, the court concluded that because the statute required sexual penetration to be intentional, it did not create a strict-liability offense. *Id.* at 303. The state makes a similar argument in regard to the child-solicitation statute's requirement that the solicitation be done "with intent to engage in sexual conduct." Minn. Stat. § 609.352, subd. 2. *Wenthe*, however, is distinguishable. The defendant in that case had reason to know that his conduct was illegal because the victim went to his church, he acted as the victim's confessor, he had conversations with the victim about religion and spirituality, and the initial penetration occurred on church grounds. 865 N.W.2d at 305. Accordingly, it was reasonable to hold Wenthe responsible for determining whether the victim sought or received religious or spiritual advice, aid, or comfort. Moser, on the other hand, never met the child in person, and the child told him she was 16. It is not reasonable to hold him responsible for verifying the child's age.

21

commission of another offense. *See Black's Law Dictionary* 1250 (10th ed. 2014) (defining "inchoate offense" as "[a] step toward the commission of another crime, the step in itself being serious enough to merit punishment"). With inchoate crimes, we criminalize behavior that is preliminary or anticipatory in nature. *Id.* In Moser's case, by making preliminary behavior a felony, without requiring criminal intent, the constitutional boundary of due process has been crossed.

To be narrowly tailored, a statute must be "neither overinclusive nor underinclusive; rather, it must be precisely tailored to serve the compelling state interest." *In re Welfare of Child of R.D.L.*, 853 N.W.2d 127, 135 (Minn. 2014) (quotation omitted). We conclude that the penalties imposed by the statute are more burdensome than necessary to serve the government interest.

"Felony" is "as bad a word as you can give to man or thing." *Morissette*, 342 U.S. at 260, 72 S. Ct. at 248. Under the child-solicitation statute, Moser is labeled a felon, subject to a three-year prison sentence, required to register as a predatory offender for the next ten years, and assigned one criminal-history point for his conviction. Minn. Stat. §§ 609.352; 243.166, subds. 1b(2), 6; Minn. Sent. Guidelines 2.B.1.b, 4.B (2014). All of these penalties accrue without Moser being able to defend himself by saying that he did not know he was soliciting a child. Minn. Stat. § 609.352, subd. 3(a). That the child lied and told him that she was 16 years old is no defense under a strict application of the statute as written. Although we take no position on the precise penalty that would bring the statute within constitutional bounds, felony liability and predatory-offender registration exceed what is permissible for the strict-liability offense at issue in this case.

Further, by eliminating the mistake-of-age defense and imposing strict liability, the child-solicitation statute includes within its ambit adults who have no desire to have sexual contact with children but instead believe that the person who they are soliciting over the Internet is another adult. If the Internet solicitation ever reached the point of an in-person meeting for sexual contact, the adult would presumably realize the individual was a child and end the encounter before any sexual activity occurred. Subjecting these adults to criminal liability does not serve the statute's purpose of protecting children from sexual exploitation. The statute, as applied to Moser, is also overinclusive and cannot survive strict scrutiny.

In summary, as applied to Moser and in other cases where the defendant has no in-person contact with the child and the child represents to the defendant that he or she is 16 or older, Minnesota Statutes section 609.352, subdivisions 2 and 3(a), violate due process by imposing strict liability and eliminating a mistake-of-age defense. The child-solicitation statute infringes on Moser's fundamental rights to liberty, to a fair trial, and to present a complete defense. It cannot survive strict scrutiny. Although the statute imposes strict liability, it has none of the characteristics that usually accompany strict-liability offenses. The statute does not create a public welfare offense, and it is not reasonable to require a defendant in Moser's position, engaging in solicitation solely over the Internet without any face-to-face contact, to verify the actual age of the person solicited. The statute does not survive strict scrutiny because, given its harsh penalties, it is not narrowly tailored to serve the compelling government interest of protecting children from sexual exploitation. Because the child told Moser she was 16 years old, Moser may have reasonably believed

23

that she was not a child as defined by the statute. We therefore conclude that the district court erred by denying Moser the opportunity to raise a mistake-of-age affirmative defense.

Moser argues that due process requires the state to prove knowledge of age, rather than merely necessitating that he be permitted to raise a mistake-of-age affirmative defense. We disagree. Due process prohibits placing the burden on the defendant to disprove any essential element of the crime. *State v. Cannady*, 727 N.W.2d 403, 407-08 (Minn. 2007). Knowledge of the child's age is not an essential element of child solicitation. Minn. Stat. § 609.352, subd. 2. Accordingly, we do not hold that the state must prove the defendant knew that the child was 15 or younger. We hold only that, in the limited situation we have identified, the defendant must be allowed to raise an affirmative defense of mistake of age. *See generally State v. Kramer*, 668 N.W.2d 32 (Minn. App. 2003) (discussing the affirmative mistake-of-age defense to third-degree criminal sexual conduct), *review denied* (Minn. Nov. 18, 2003). As with any affirmative defense, to receive a jury instruction and have an opportunity to assert the defense, the defendant must meet a burden of production by making a prima facie showing that the defense applies. *Cannady*, 727 N.W.2d at 407-08. Here, Moser met this burden by presenting evidence that the child told him she was 16. Although we conclude that Moser should have been permitted to present the defense at trial, we take no position on whether a mistake-of-age defense would have succeeded. That is the province of a jury.

Typically, we would reverse Moser's conviction and remand for a new trial at which Moser would be given the opportunity to raise the affirmative defense. In this case, however, the parties proceeded according to Minnesota Rules of Criminal Procedure 26.01,

24

subd. 4. As required by that rule, Moser and the state acknowledged in writing that the district court's pre-trial orders denying Moser's motion to raise the affirmative defense of mistake of age were dispositive or that a trial would be unnecessary if Moser prevailed on appeal. Minn. R. Crim. P. 26.01, subd. 4(c). The state is bound by this agreement. Therefore, we reverse Moser's conviction without remanding for a new trial.

## DECISION

There are weights and balances in the scales of justice. Sexual solicitation of children is a grave concern. But the concept that wrongdoing must be conscious in order to be criminal and subject an offender to years of imprisonment has long been a foundation of our justice system. When the person solicited represents that he or she is 16 or older, the solicitation occurs over the Internet, and there is no in-person contact between the defendant and the person solicited, the prohibition in Minnesota Statutes section 609.352, subdivision 3(a), on a person charged under the child-solicitation statute raising the affirmative defense of mistake of age violates substantive due process. The district court erred by denying Moser's motion to raise that defense.

**Reversed.**